Bernard Ryan, P. J.
For the purposes of the Niagara Thruway and pursuant to article 12-A of the Highway Law, and title 9 of article 2 of the Public Authorities Law, the State of New York appropriated uplands in Brie County fronting 1,321.61 feet along the blue ling of the Erie Canal and 141.89 feet in Niagara Street in the city of Buffalo and an adjacent parcel described as lying under water and running 2,700 feet along the Niagara River. The parcels taken were part of the area known as the towpath. They were occupied by a number of cottages and boathouses, the 60 odd owners of which are members of the Niagara Frontier Residents Association, Inc., of whom the claimants allege they are the trustees and as such hold the legal title to the property. The appropriation maps and descriptions were filed in the Erie County Clerk’s office on May 23,1952. They were not served upon these claimants until May 24, 1954. This claim was filed December 29, 1954. The timeliness of the filing is not questioned.
*716 Claimants assert title by virtue of a referee’s deed upon foreclosure of a tax lien by the City of Buffalo. The lis pendens in the foreclosure proceeding, which was pursued in the County Court of Erie County, was filed May 15, 1951. Judgment was entered March 3, 1952. On May 14, 1952 the property was sold at public auction to one David Judd who thereafter — the date is not given — assigned his bid to the claimants. We are not informed of its date but the referee’s deed by which the property was conveyed to these claimants was recorded on December 31, 1952 in Liber 5247 of Deeds at page 570 in the Erie County Clerk’s office.
The Attorney-General now addresses two motions to the claim as filed. By the first he seeks to interpose a counterclaim. That is Motion Ño. 4076. By the second he asks this court to interplead additional parties claimant. That is Motion No. 4077. We shall first discuss the request for an order of interpleader.
The persons whom the Attorney-General asserts are necessary and proper parties herein without whose joinder a “ complete conclusive determination,” he says, cannot be made, are seven in number. Three he would interplead as individuals, two as individuals and in a representative capacity, and two in a representative capacity only. He states that at the time of the appropriation they and an eighth person, individually and in a representative capacity, were the owners of the record title to the property. He alleges that the eighth person is since deceased but he makes no suggestion of the need for an appointment of a legal representative of her individual estate nor of a successor to the interest which she held in a representative capacity. Nor does he inform us as to whether or not representatives of either interest in the eighth share have been appointed by a court of competent jurisdiction. Since the Attorney-General omits from his request for interpleader any provision for this unrepresented share, it seems obvious that his proposal is incomplete, assuming that any of the eight persons are proper and necessary parties herein. Further, the moving affidavit states that all of the persons sought to be interpleaded were served personally or by publication with the maps, descriptions and notices of appropriation but he does not tell us when such service was effected. The notice of appropriation was filed in the Erie County Clerk’s office more than four years ago. The Statute of Limitations on this cause of action is two years, running from the date of service. Up to date no claim has been filed with the clerk of this court by any of the eight persons mentioned, either individually or in a representative capacity. While we are not informed of the date of service upon them, a *717 presumption on our part that it was within the last two years and that the statute had not run would imply that responsible State officials had been most dilatory in complying with the provisions of the Highway Law which define their duties. We shall not indulge in such a presumption. The map having been filed May 23, 1952, we deem it highly unlikely that notices were not served earlier than a date within the past two years. It would, of course, have been helpful if the Attorney-General had given us specific information. Nevertheless, to grant the order of interpleader might well result in bringing in parties of whose claims, if any such exist, this court lacks jurisdiction. Upon these considerations the motion must be denied for insufficiency in the moving papers.
However, there are other reasons for denying the motion. The claimants’ reply affidavit asserts, and it is not disputed, that all of the persons whom the Attorney-General seeks to interplead were parties defendant in the foreclosure action. The judgment of the County Court of Erie County is not subject to attack in this jurisdiction. Its validity is presumed. Neither the pleadings nor the judgment roll have been here presented to us and we are not informed as to what statute was invoked by the City of Buffalo in its suit. If, as seems to be assumed by the Attorney-General, the liens were foreclosed pursuant to title 2 of article VII-A of the Tax Law, it must be recognized, as the Attorney-General contends, that by subdivision (m) of section 164 thereof it is the conveyance made pursuant to the judgment in the action which vests 11 in the purchaser all right, title, interest, claim, lien and equity of redemption in and against the lands sold * * * of all parties to the action ”. But this is not to say that the judgment of foreclosure and sale did not cut off the interest of the parties joined in the action and of whom the County Court of Erie County had jurisdiction for the same statute continues as follows: “ and all such parties and persons shall be barred and forever foreclosed by the judgment in such action of all right, title, interest, claim, lien and equity of redemption in and to the lands sold or any part thereof ”. (Italics supplied.) Thus it seems to be clear that the persons sought to be interpleaded herein have been divested of any interest they might have had in the property and therefore that they are not necessary and are not even proper parties to this action.
A peculiar situation is presented by the chronology of events. The parcels were appropriated by the State between the time of the sale and the delivery of the deed. Equitable title passed to the purchaser upon the sale and had that occurred prior to *718 the enactment of chapter 731 of the Laws of 1936, effective May 26, 1936, such purchaser, clearly, would have been entitled to the award. (Reife v. Osmers, 252 N. Y. 320 [1929]; Clarke v. Long Is. Realty Co., 126 App. Div. 282 [1908]. See, also, 29 C. J. S., Eminent Domain, § 202, Vendor and Purchaser, p. 115 et seq.) However, under the statute mentioned, the Uniform Vendor and Purchaser Risk Act (Real Property Law, § 240-a) if a material part of the premises is taken by eminent domain the vendor cannot enforce the contract when neither legal title nor possession of the subject matter has been transferred to the purchaser. This enactment has been held to apply to judicial sales. (New York Med. Coll. v. 15-21 E. 111th St. Corp., 90 N. Y. S. 2d 591 [1949].) We do not know when the claimants went into possession. (See Monahan v. State of New York, 189 Misc. 533 [1947].) But it does appear that they, as assignees of the purchaser at the sale, accepted the deed from the referee and it does not appear that there was any abatement of the purchase price although a material part of the premises sold had, in the meantime, been appropriated, by the State.
The State of New York has recognized the title and possession of these claimants by serving them with maps and notices of appropriation. Although the question is not before us at this time it would seem that the right to file this claim for damages took the place of the lands appropriated and that these parties are properly before the court.
Turning, now, to Motion No. 4076, which is the defendant’s application for permission to file a counterclaim, we find that the proposed pleading sets up two causes of action, the second in the alternative. In the first it is alleged that on or about May 23, 1952 the parcels appropriated by the State “ were occupied by, under and through the claimants by agreement entered into between claimants and the occupants or users of the several structures and properties situate wholly or partially within the aforesaid parcels (referring to the parcels appropriated) and they and those occupying under and through them have continued to occupy the said premises until the present time without paying any rent therefor to defendant. ’ ’ The reasonable rental value is pleaded at $1,250 per month.
The alternative and second cause of action pleads that the ‘ ‘ parcels of property were occupied by the claimants and their " assignors and they have continued to occupy the said premises up until the present time without paying any rent therefor to defendant.” Judgment is demanded at the rate of $1,250 per month from the 23d of May.
*719 The proposed counterclaim attempts, in effect, to plead alternative causes of action for rent. Under both of its theories the State seeks to hold the claimants liable for rent. The proposed counterclaim contains no allegation of a promise, express or implied, on the part of the claimants to pay any rent to the State. It merely alleges use and occupation of the property by the claimants after its appropriation by the State. The relation of landlord and tenant can be created only by contract, express or implied, and will not be implied where the acts and conduct of the parties negative its existence. If the elements of offer and acceptance, express or implied, are absent, the relation of landlord and tenant does not exist. (Stern v. Equitable Trust Co., 238 N. Y. 267, 269 [1924].) Continued possession and occupancy on the part of the tenant are not of themselves sufficient to spell out an agreement to pay rent or to create the traditional relationship of landlord and tenant. (Preston v. Hawley, 101 N. Y. 586 [1886]; Collyer v. Collyer, 113 N. Y. 442 [1889] ; United Security Corp. v. Suchman, 307 N. Y. 48 [1954]; Davis v. Caldwell, 1 A D 2d 827 [1956]. See Real Property Law, § 220.)
"Where the State appropriates land it stands toward the owner as buyer toward seller. (Jackson v. State of New York, 213 N. Y. 34 [1914].) Where a vendor of real property remains in possession of the premises after the conveyance he does not thereby become a tenant of the purchaser and is not liable for use and occupancy. (Preston v. Hawley, supra; Castle v. Armstead, 168 App. Div. 466 [1915], affd. 219 N. Y. 615; McAdam on Landlord & Tenant [5th ed.], p. 60.) No agreement to pay rent can be implied from the facts recited in the proposed counterclaim. Lacking an allegation that there was an agreement, express or implied, on the part of the claimants to pay rent to the State, the proposed counterclaim fails to state a cause of action.
Claimant raises a question as to the timeliness of the application for leave to file a counterclaim. In view of the foregoing, such question becomes academic. The motion for permission to file a counterclaim is denied. Submit separate orders denying the two motions.