CITY AND COUNTY OF HONOLULU, A Municipal Corporation, Plaintiff-Appellee *v.* A. S. CLARKE, INC., Successor in Interest of Cal-Turf Hawaii, Inc., a Hawaii Corporation, Defendant-Appellant, and QUEEN'S MEDICAL CENTER, a Hawaii Corporation, et al., Defendants-Appellees

NO. 6124

NOVEMBER 22, 1978

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY OGATA, J.

This is an eminent domain action brought by plaintiff-appellee City and County of Honolulu (City). The complaint names eleven defendants, including defendant-appellant A. S. Clarke, Inc. (Clarke). The City moved for summary judgment against Clarke and two other defendants. Clarke opposed the motion on the ground that it was entitled to compensation from the City due to its (Clarke's) asserted leasehold interest in the subject property.

The court below granted the City's motion for summary judgment, thus dismissing any and all claims which Clarke and the two other defendants may have against the City. Clarke alone appeals from that judgment. We are of the opinion that the motion for summary judgment was properly granted, and we affirm the judgment of the court below.

I.

The City commenced this action on May 16, 1975, for the purpose of acquiring an 11-acre parcel of land in Halawa Valley on Oahu for a bus terminal site. The parcel sought to be condemned is part of a larger tract of land which is owned by defendant Queen's Medical Center (Queen's). The entire tract owned by Queen's is registered with the Land Court under Transfer Certificate of Title No. 47,715.

Clarke's basis for claiming a leasehold interest in the property sought to be condemned stems from the following facts. On June 6, 1956, the subject property was leased by Queen's to defendant Oahu Sugar Company, Ltd. (Oahu Sugar). This lease, which was duly registered with the Land

Court on June 14, 1956, contains a condemnation clause.[1] Oahu Sugar subsequently assigned its leasehold interest in the property to defendant Central Oahu Land Corporation (Central Oahu). The exact date of this assignment does not, as far as we can tell, appear in the record. However, on November 1, 1968, Central Oahu's agent sent a lease proposal letter to Clarke's predecessor-in-interest, Cal-Turf Hawaii, Inc. (Cal-Turf).

The lease proposal letter listed various terms and conditions to be included in a formal lease to be executed at a later date. The lease proposal letter contained the names of the parties, a general description of the property to be leased, the amount of rental to be paid, the terms of payment, the duration of the lease, and various other provisions, including a condemnation clause. The letter further specified that the lease proposal was being made subject to the approval of the boards of directors of Oahu Sugar and Central Oahu, as well as the trustees of Queen's.

The terms and conditions outlined in the 1968 letter were approved and accepted by Cal-Turf, whose representative signed and returned the letter to Central Oahu's agent. Clarke thereafter succeeded to the interests of Cal-Turf,[2] and Clarke then took possession of the subject property. The record is devoid of any reference to the precise date on which Clarke took possession of the property, although the 1968 letter indicates that the lessee's occupancy of the property would commence as soon as the lease proposal was accepted. Clarke was thus in possession of the subject parcel and was using it to grow grass and sod at the time that this condemnation action was commenced in 1975.

No formal lease was ever executed pursuant to the 1968 letter, and the letter itself was never registered with the Land Court.

---

[1] We are unable to ascertain from the certified copy of this lease, a portion of which is attached as an exhibit to the City's motion for summary judgment, the actual term of this lease.

[2] The manner by which Clarke succeeded to Cal-Turf's interests is not apparent from the record.

Prior to initiating this condemnation action, the City attempted to negotiate the final amount of the condemnation award with Queen's, the owner of the property. The City offered to pay Queen's $1,350,000 for free and clear title to the 11-acre parcel. Shortly thereafter, counsel for Clarke informed the City by letter that "the aggregate price or value of the property is a matter which must be worked out between Queen's Hospital and the City." Queen's then accepted the City's offer of $1,350,000 for the parcel.

The City thereupon proceeded with this action, presumably to obtain a formal judicial determination of the City's right and title to the property. Clarke answered the complaint by contending that it had a definite "leasehold interest" in the property.

On September 17, 1975, the City filed its motion for summary judgment pursuant to HRCP Rule 56. The primary basis for the City's motion was that the 1968 letter was insufficient to give Clarke a compensable interest in the property.[3] Clarke answered by asserting that based upon a certain Development Agreement entered into between Queen's and Oahu Sugar, the unregistered 1968 letter was in fact a valid lease between Queen's and Clarke.

Although the precise grounds for its decision are unclear, the court below indicated that it felt that the 1968 letter was at most a "contract or letter agreement" to execute a lease in the future.[4] The court thus determined that Clarke had at

---

[3] Oahu Sugar and Central Oahu were the two additional parties defendant against which the City moved for summary judgment. The City contended in its motion that Oahu Sugar and Central Oahu had no compensable interest in the property by virtue of the terms of the condemnation clause in the 1956 lease with Queen's. Neither of these defendants opposed the City's motion in the court below, and only Clarke has appealed from the grant of summary judgment in the City's favor.

[4] The transcript of the hearing below reveals the following statements made by the court during discourse with Mr. Greeley, counsel for Clarke:

THE COURT: The Court probably didn't make itself clear. The Court said your clients were not entitled to the proceeds in this action, but you did or you could have a claim in another action.

MR. GREELEY: Aren't they the same proceeds, your Honor?

THE COURT: I think it's [sic] you're talking about two different transactions

most a cause of action against either or both Central Oahu and
Queen's under the 1968 letter, and that such a cause should
be litigated in a separate action. The court thereupon ruled
that Clarke had no interest in the parcel for which the City
was required to pay just compensation, and it dismissed all of
Clarke's claims against the City.

II.

The parties to this appeal have raised a number of issues.
A primary question, of course, is whether the 1968 letter is a
valid lease, thus giving Clarke a compensable interest against
the City. However, we need not decide that question, for the
fact that the 1968 letter was not registered with the Land
Court is dispositive of Clarke's status in this proceeding.
Thus, we conclude that even if the 1968 letter was a valid
lease, the failure to register the letter with the Land Court
precludes Clarke from asserting any interest against the City
with respect to the subject property.

We therefore begin with the proposition, for the sake of
argument, that the 1968 letter was a valid lease. As such,
HRS § 501-121 (1976) plainly provides as follows:

> *Leases; registration required.* Leases of registered
> land for a term of one year or more shall be registered.

The subject property was registered with the Land Court.
The 1968 letter provided for a lease term of 25 years, with
options to renew. The letter should thus have been registered
with the Land Court pursuant to HRS § 501-121 (1976).

The ordinary effect of a failure to register a leasehold
interest in Land Court property is that every subsequent good
faith purchaser who takes the certificate of title for value

---

because all they had was a contract or a letter agreement that they could have —
    MR. GREELEY: Under that contract we're entitled to certain compensation
if the property is condemned. And what your Honor said was the condemning
authority pays the compensation —
    THE COURT: You have a letter. Perhaps the Court should not have used the
word "contract" because it may not be a contract. That's the issue you will
litigate in the next action.

holds the registered property free from the unregistered leasehold interest. HRS § 501-82 (1976) provides as follows:

> *Tenure of holder of certificate of title.* Every applicant receiving a certificate of title in pursuance of a decree of registration, and every subsequent purchaser of registered land who takes a certificate of title for value and in good faith, hold [*sic*] the same free from all encumbrances *except* those noted on the certificate in the order of priority of recordation, and any of the following encumbrances which may be subsisting, namely:
>
> \*   \*   \*   \*   \*
>
> (4) Any lease, coupled with occupancy, for a term *not* exeeding one year; . . . .
>
> \*   \*   \*   \*   \*

[Emphasis supplied.]

Clarke argues that the City does not qualify as a "taker" of the certificate of title to the subject property within the literal terms of HRS § 501-82 (1976). It is true that while the City has proceeded to judgment in this action, no certificate of title has, as far as we can tell from the record, been issued to it. Clarke thus asserts that the City cannot claim the protection of HRS § 501-82 (1976) in order to exclude Clarke from eminent domain compensation.

We are convinced, however, that although the City may not be a "taker" of a certificate of title within the literal meaning of HRS § 501-82 (1976), it had, at the time of the decision below on the City's motion for summary judgment, gained a superior position against Clarke with regard to obtaining title to the 11-acre parcel. In our view, there was consequently no way in which Clarke could have asserted an interest superior to that of the City in this proceeding, and the court below correctly dismissed Clarke's claims against the City.

Our conclusion is based upon a lis pendens which the City filed with the Assistant Registrar of the Land Court shortly

after this action was commenced. By virtue of the filing of the lis pendens, the City obtained clear priority with regard to any interest, based upon the unregistered letter, which could have been thereafter claimed by Clarke in this eminent domain proceeding. *Cf. In re Application of Ward*, 31 Haw. 781 (1931), *aff'd.*, 61 F.2d 896 (9th Cir. 1932). Clarke could not, subsequent to the filing of the lis pendens, have registered the 1968 letter and then have claimed an interest superior to that of the City. Upon the entry of a final order of condemnation, the City would have been entitled to take a certificate of title to the subject property and Clarke would have been precluded from claiming a right to compensation through its unregistered lease letter.

Therefore, from the time that the lis pendens was filed up to the time that a final order of condemnation was issued, Clarke's status would have remained unchanged. The City would, due to the filing of the lis pendens, have prevailed in any event insofar as Clarke's right to compensation from the City was concerned. We thus see no merit in the argument that the City could not claim, at least against Clarke, the protection of HRS § 501-82 (1976) in this case.

Clarke further argues, however, that the protection of HRS § 501-82 (1976) applies only to "purchasers" of registered property, and that the City cannot be considered to be such a "purchaser" within the meaning of the statute when it seeks to acquire registered property through its power of eminent domain. As far as HRS § 501-82 (1976) is concerned, there is no substantive distinction between a public entity which acquires registered property through condemnation and a party who purchases registered property in a private transaction.

A taking by the government in a condemnation action is characterized as a "sale", albeit a forced one. *Madden v. Commissioner*, 514 F.2d 1149, 1151 (9th Cir. 1975); *Stockton Harbor Industrial Co. v. Commissioner*, 216 F.2d 638, 651 (9th Cir. 1954), *cert. denied*, 349 U.S. 904 (1955); *Pedrotti v. Marin County*, 152 F.2d 829, 831 (9th Cir.), *cert. denied*, 328 U.S. 853 (1946); *Hawaiian Gas Products, Ltd. v. Commissioner*, 126 F.2d 4, 5 (9th Cir.), *cert. denied*, 317 U.S. 653 (1942).

Moreover, a condemnor attains the status of a bona fide purchaser for value, *Langston v. City of Miami Beach,* 242 So.2d 481, 483 (Fla. App. 1971), and stands toward the owner of the property as buyer toward seller. *Geist v. State,* 3 Misc.2d 714, 719, 156 N.Y.S.2d 183, 189 (Ct. Cl. 1956).

Therefore, a condemning authority which seeks to acquire title to registered property through a judicial proceeding may invoke the same rights and protections as may be claimed with regard to registered property acquired by a private land purchaser. Hence, we reject Clarke's contention that HRS § 501-82 (1976) does not apply to a public entity which, like the City, seeks to acquire registered property through the power of eminent domain.

We go on to take note of HRS § 501-101 (1976), which provides:

> *Voluntary dealing with registered lands.* An owner of registered land may convey, mortgage, lease, charge, or otherwise deal with the same as fully as if it had not been registered. . . . No deed, mortgage, or other voluntary instrument, except a will and a lease for a term *not* exceeding one year, purporting to convey or affect registered land, shall take effect as a conveyance or bind the land, *but shall operate only as a contract between the parties,* and as evidence of authority to the registrar or assistant registrar to make registration. *The act of registration shall be the operative act to convey or affect the land,* . . . . [Emphasis added.]

This statute thus provides that any *unregistered* instrument purporting to convey or affect registered land shall not bind or affect the land but shall only be regarded as a contract between the parties.

It is obvious, therefore, that the unregistered 1968 letter could not be given such effect as to bind the subject property, but could operate only as a contract between the parties. The court below correctly determined that Clarke had at most a cause of action under the purported "contract" as represented by the 1968 letter. The court below further correctly

determined that such a cause of action exists against either or both Central Oahu and Queen's, and that no claim exists against the City.

The Hawaii cases relied upon by Clarke are far from dispositive. Clarke incorrectly states in its opening brief that *In re Application of Ward*,[5] 31 Haw. 781 (1931), *aff'd*, 61 F.2d 896 (9th Cir. 1932), "specifically recognized that a party having an unregistered claim to land court property can assert that claim in a condemnation action." No such conclusion was in fact reached by the court in that case, and the fact that the subject property was there conveyed by an *unregistered* deed subsequent to the institution of the condemnation action was never discussed by the court. Hence, the issue of non-registration of the claimed interest never formed a basis for the outcome of that case. We accordingly reject any implication which may arise from *Ward* that an unregistered interest may be compensable in a condemnation action.

Another case relied upon by Clarke is *Akagi v. Oshita*, 33 Haw. 343 (1935). In *Akagi*, a party holding an unregistered sublease was held to have no interest as against the assignee of the main lease, who had registered his assignment of lease and who had taken the property without actual notice of the sublessee's possession of the premises. The court in *Akagi* emphasized the lack of *actual notice* on the part of the assignee of the lease, and it concluded that the unregistered sublease created no interest in the property.

Clarke thus contends that because the court in *Akagi* emphasized the new lessee's lack of actual notice of the sublessee's presence, *Akagi* cannot be taken to mean that an unregistered interest is not a compensable property interest. However, the emphasis in *Akagi* on the lack of actual notice on the part of the assignee was due to the court's reluctance to rule on the question whether notice of an existing unregistered claim to the property may affect the exclusivity of the certificate of title. Later Hawaii cases have since resolved the question by holding that actual or constructive notice of unregistered interests notwithstanding, a good faith taker for

---

[5] This case has also been cited as *In re Kewalo*.

value of a certificate of title holds the property free from all such encumbrances. *Packaging Products Co. v. Teruya Brothers, Ltd.*, 58 Haw. 580, 574 P.2d 524 (1978); *Honolulu Memorial Park, Inc. v. City and County of Honolulu*, 50 Haw. 189, 436 P.2d 207 (1967). To this specific extent, then, the utility of the *Akagi* case has been greatly diminished.

Clarke further contends that in *Mossman v. Hawaiian Trust Co.*, 45 Haw. 1, 361 P.2d 374 (1961), "the Court specifically rejected the argument that an unfiled conveyance was only a contractual right and not an interest in the property." *Mossman* was an action for specific performance, in which the plaintiffs claimed an interest in the property under an unregistered conveyance. The defendant claimed that under the terms of the Land Court registration statute, the plaintiffs had at most a contractual claim due to their failure to register their deed, and that no action for specific performance could be brought. The court rejected the defendant's contention, holding that a suit for specific performance was not ruled out by the fact that the property was registered with the Land Court. No indication was given by the court, however, that the unregistered conveyance *could* otherwise bind or affect the property.

Clarke also cites *Waterhouse v. Capital Investment Co.*, 44 Haw. 235, 353 P.2d 1007 (1960), to support its contention that the instant case should not be decided absent full factual development of the record. As our discussion herein has already indicated, however, Clarke's claims could have been and were properly adjudicated at the summary judgment stage of the proceedings. Clarke's position could not have been changed had it been allowed to participate in this case to its conclusion. Therefore, the issues pertaining to Clarke were properly decided under the present state of the record, and the *Waterhouse* case does not dictate a contrary result.

Clarke has cited a number of cases from other jurisdictions supporting the proposition that contractual rights regarding real property are compensable interests for purposes of eminent domain. However, all but one of the cases cited by Clarke are from jurisdictions which do not possess Land

Court registration systems.[6] Hence, those cases are not help-full in determining whether the failure to register contractual interests as required by statute may be overlooked in ascertaining whether an interest is compensable in condemnation proceedings.

The only case cited by Clarke which arose in a jurisdiction having a Land Court registration system is *Spadea v. Stewart,* 350 Mass. 218, 214 N.E.2d 72 (1966), in which a purchaser of registered property which was condemned prior to the registration of the sale papers was allowed to be a party in the condemnation proceeding and was deemed eligible for a portion of the condemnation proceeds awarded to the seller.

We choose not to follow the result reached in *Spadea* for the following reasons. First, the question of registration of the sale documents was never really discussed by the court in *Spadea,* and there is room for doubt as to whether the issue was specifically considered by the court in that case. Second, there is some indication that *Spadea* should be restricted to its own facts, for the court in that case seemed to rely on prior Massachusetts authority standing for the proposition that contractual rights to purchase land may be compensated in eminent domain proceedings to the extent that the prospective purchaser pays over the amount that he would have otherwise paid if he had purchased the property. The prospective purchaser in such a situation would obtain his compensation from the original sum which was awarded in the condemnation proceeding, and the condemning authority would not be required to pay an additional amount as the result of the inclusion of the prospective purchaser in the proceeding.

In the instant case, a nearly identical outcome would obtain under the result which we have reached, for Clarke would be required to seek compensation from its own landlord for the loss of the leasehold interest. Any compensation to Clarke would foreseeably be paid out of the general award

---

[6] Another case, *Olson v. City of Seattle,* 30 Wash. 687, 71 P. 201 (1903), was decided prior to the passage of the Torrens statute in Washington.

which the City has already paid, and the City would not at any rate be required to pay a greater overall amount as compensation.

We therefore hold that Clarke has no interest in the subject property for which the City must provide compensation. Our result, which is predicated upon the failure to register the 1968 letter, is consistent with the views expressed by this Court regarding the statutory objective of assuring the integrity of land titles registered pursuant to the Land Court registration statute. *Packaging Products Co. v. Teruya Brothers Ltd., supra; In re Application of Bishop Trust Co.,*[7] 35 Haw. 816 (1941). The City was entitled to proceed with acquisition of the subject property to the exclusion of all unregistered interests in the property.

There are no genuine issues of material fact regarding the filing of the lis pendens and the nonregistration of the lease letter, and we hold that the City is consequently entitled to judgment as a matter of law. *Packaging Products, supra; Graham v. Washington University,* 58 Haw. 370, 569 P.2d 896 (1977); *Technicolor, Inc. v. Traeger,* 57 Haw. 113, 551 P.2d 163 (1976); *Gum v. Nakamura,* 57 Haw. 39, 549 P.2d 471 (1976); *Aku v. Lewis,* 52 Haw. 366, 477 P.2d 162 (1970); *Abraham v. Onorato Garages,* 50 Haw. 628, 446 P.2d 821, *rehearing denied,* 50 Haw. 639, 446 P.2d 821 (1968).

This disposition makes it unnecessary for us to consider the remaining issues which have been raised by the parties.

Affirmed.

*Joseph T. Kiefer (Carlsmith, Carlsmith, Wichman & Case* of counsel) for Defendant-Appellant A. S. Clarke, Inc.

*Dennis E. W. O'Connor* and *David A. Ezra (Hoddick, Reinwald, O'Connor & Marrack* of counsel) for Defendant-Appellee Queen's Medical Center.

*Samuel P. King, Jr.,* Deputy Corporation Counsel, for Plaintiff-Appellee City and County of Honolulu.

---

[7] This case has also been cited elsewhere as *Land-Title, Bishop Trust.*