**In re KIKI, LTD., Debtor.**

**Bankruptcy No. 75–00158.**

United States Bankruptcy Court,
D. Hawaii.

May 14, 1984.

Edward C. Kemper, Honolulu, Hawaii, for creditor, Westervelt Trust.

V. Spencer Page, Honolulu, Hawaii, for debtor.

## MEMORANDUM DECISION AND ORDER

JON J. CHINEN, Bankruptcy Judge.

Trustee for Debtor KIKI, Ltd., (hereinafter "Debtor"), on August 17, 1981, filed objections to claim # 69 of the Marcia-Neal Westervelt Revocable Trust, (hereinafter "Westervelt Trust" or "Trust"). A trial on the objections was held on October 15, 1982, before the undersigned Bankruptcy Judge with V. Spencer Page, Esq., appearing on behalf of the trustee and Edward C. Kemper, Esq. appearing on behalf of Westervelt Trust. The basis for the trustee's objections is that the Westervelt Trust obtained its claim through the fraudulent and/or wrongful methods and practices of the Trust's trustee, Mr. H. Lee Westervelt, (hereinafter "Westervelt"); that Westervelt made capital contributions to the Debtor corporation rather than payment for judgments against the company; that the Westervelt Trust is not entitled to recover the full face value of the assigned judgments but only the amount of consideration actually paid in obtaining those judgments; and that the Westervelt Trust's status is that of a general unsecured creditor and not a secured creditor.

The Westervelt Trust maintains that the objections raised by the trustee for Debtor are barred from relitigation in the bankruptcy proceeding herein under the doctrine of res judicata and collateral estoppel. It argues that the defenses of fraud, breach of fiduciary duty, offsets and the contested value of the state court judgment liens were all litigated and decided against the Debtor in various earlier state court proceedings and are thus not matters upon which this court should re-litigate.

As to the issue of the status of the claims of the Westervelt Trust, the Trust argues that it is a secured creditor because all judgments, with one exception, which were obtained in its favor in the state courts, were duly recorded in the Bureau of Conveyances in the State of Hawaii under the regular system of recordation of liens.

Based on the records on file and arguments of counsel, the Court finds the following:

## FINDINGS OF FACT

1. On April 1, 1975, KIKI, Ltd., filed a Chapter 11 petition with the United States Bankruptcy Court.

2. On January 26, 1978, the Westervelt Trust filed proof of claim # 69 against Debtor in the amount of $152,203.45. This claim comprised of various judgments and assignment of judgments against KIKI, Ltd., and in favor of Westervelt, as trustee for the Westervelt Trust. The assignments, judgments and claims in favor of Westervelt were filed under the regular system at the Bureau of Conveyances of the State of Hawaii. They consisted of the following:

a. An assigned judgment in favor of a Mr. Angelo Rossi and against KIKI, Ltd., for a face amount of $55,000.00. Westervelt purchased this judgment from Mr. Rossi in 1971 for $25,000.00 plus shares of stock in KIKI, Ltd.

b. A judgment in favor of Curlette C. Courtney and against KIKI, Ltd., for $13,200.00. Westervelt acquired this judgment in October of 1972 from Mr. Courtney for $13,200.00.

c. A $22,150.00 judgment on a promissory note executed by KIKI, Ltd., in favor of Mr. Hoover Tateishi. Westervelt purchased this note from Mr. Tateishi for $15,000.00 in December, 1971.

d. A judgment for $3,297.69 in favor of Westervelt on a third-party complaint against KIKI, Ltd. First Hawaiian Bank initiated the suit against Westervelt for amounts due on a loan for $6,000.00. Westervelt borrowed this money in order to meet payroll responsibilities and other expenses at KIKI.

e. A claim by Westervelt for $4,000.00 which Westervelt paid to a stockholder of KIKI, Ltd., in order to resecure a certain stock certificate. This payment was made in order to appease the Federal Communication Commission that the company was being properly operated and that the station's license should be continued.

f. A claim for $25,000.00 which was later dismissed by Stipulation of the parties herein as being duplicative of a previous claim.

3. When Westervelt agreed to acquire the claims from the various individuals whose suits were pending against the Debtor, the Debtor was already facing serious financial straits. Westervelt's willingness to purchase these claims was due in large part as a favor to a friend, a Mr. Warren Daniels. Mr. Daniels was an officer of KIKI, prior to Westervelt's association with the company.

4. The source of funds used by Westervelt to obtain the Rossi and Courtney judgments as well as the promissory note issued to Mr. Tateishi and subsequently assigned to Westervelt was from the Westervelt Trust. The Trust also loaned Westervelt $6,000.00 in order to satisfy First Hawaiian Bank's judgment against Westervelt.

5. The total amount of loans made by the Westervelt Trust to Westervelt was $63,200.00.

6. On February 19, 1975, Westervelt assigned to the Westervelt Trust the aforestated claims and judgments. As previously mentioned they all were filed with the Bureau of Conveyances of the State of Hawaii under the regular system, but they were not registered with the Land Court System.

7. During the period of negotiations between Westervelt and the various individuals holding claims against KIKI, Ltd., Westervelt was vice-president of KIKI, Ltd. He resigned from the company on February 25, 1974.

8. When Westervelt asserted his claim against KIKI based on the assignment of the Rossi judgment, KIKI retained attorney Steven Kroll to abrogate enforcement on the judgment. KIKI's defenses to enforcement were based on allegations of fraud and breach of fiduciary duty on the part of Westervelt, that is, as an officer and director of the KIKI, Ltd., Westervelt owed a fiduciary duty to the company and should therefore be precluded from collecting on the judgment. Furthermore, it was contended that Westervelt's acquisition of the Rossi claim was a fraudulent scheme against the corporation to force it into bankruptcy. At trial, the State Court rejected the company's charges and denied KIKI's motion for injunctive relief against enforcement of Westervelt's claims.

9. On May 30, 1974, a First Circuit State Court granted Westervelt's claim on a promissory note issued to Hoover Tateishi and assigned to Westervelt. Once again in that case, Debtor defended on grounds of fraud and breach of fiduciary duty. Debtor further asserted that Westervelt should not be entitled to receive the full amount of the note but only the actual consideration paid for the instrument, i.e. $15,000.00. The full amount on the note was for $22,500.00. Debtor also filed a counterclaim against Westervelt for $12,500.00 for money had and received. In granting judgment in favor of Westervelt for the full face value of the note, the State Court dismissed Debtor's defenses and counterclaim.

10. In Civil # 40662, First Hawaiian Bank brought suit against Westervelt on a promissory note for $6,000.00 which the latter executed in order to meet payroll expenses and other costs at KIKI. Westervelt filed a third-party complaint against KIKI alleging that the company was ultimately responsible for the debt. KIKI's defense to Westervelt's charge included want of consideration, fraud and breach of fiduciary duty. On this basis, KIKI also counterclaimed for damages of $250,000.00. At the conclusion of trial on April 7, 1975, First Hawaiian Bank recovered its claim for principal, costs, and attorney's fees.

Westervelt was granted partial recovery of $3,297.69 on his third-party complaint. This judgment was logged with the Bureau of Conveyances, regular system, on April 11, 1975.

11. On November 29, 1971, a stipulated judgment was entered by a First Circuit Court in favor of Curlette C. Courtney for a total sum of $13,200.00 payable by KIKI, Ltd. Mr. Courtney assigned this judgment, *inter alia,* to Westervelt for a corresponding amount of $13,200.00 on October 31, 1972.

12. On April 6, 1972, Westervelt tendered $4,000.00 to Louis C. Harms in order to resecure stock in KIKI's holding company, Court Broadcasting. The reacquisition of this stock was deemed essential by KIKI to obtain approval from the Federal Communication Commission for the station's broadcasting license.

13. On January 1, 1961, KIKI, Ltd., entered into a ten-year lease agreement with two (2) five-year options for renewal with Victoria Ward, Ltd., for the property upon which KIKI radio station is located.

14. The subject property is registered land and, under HRS § 501–121, the lease was subject to enrollment under Hawaii's Land Court system of recordation. The lease, however, was never noted on any Transfer Certificate of Title or registered with the Land Court.

15. Although all of the Trust's claims and judgments have been duly recorded pursuant to the first paragraph of H.R.S. § 636–3, the trustee for KIKI, Ltd. points out that the last sentence of this statutory provision controls. That sentence states, "In the case of registered land, section 501–102 shall govern."

## CONCLUSIONS OF LAW

1. In *Morneau v. Stark Enterprises, Ltd.,* 56 Haw. 420, 539 P.2d 472 (1975), the Hawaii Supreme Court set forth the standard under which the doctrines of res judicata and collateral estoppel would apply in order to bar a party from relitigating matters previously adjudicated. Quoting from *Ellis v. Crockett,* 51 Haw. 45, 55, 451 P.2d 814, 822 (1969), the Court cited in *In re Bishop Estate,* 36 Haw. 403, 416 (1943), that a

> [J]udgment of a court of competent jurisdiction is a bar to a new action in any court between the same parties or their privies concerning the same subject matter, and *precludes the relitigation, not only of the issues which were actually litigated* in the first action, *but also of all grounds of claim and defense which might have been properly litigated* in the first action but were not litigated or decided. (Emphasis added.)

*Morneau,* 56 Haw., at 422, 423, 539 P.2d 472.

2. As to collateral estoppel, the Hawaii Supreme Court in *Morneau,* supra, again citing from *Ellis v. Crockett,* supra, stated,

> Collateral estoppel is an aspect of *res judicata* which precludes the relitigation of a fact or issue which was previously determined in a prior suit on a different claim between the same parties or their privies. *Yuen v. London Guarantee and Accident Co.,* 40 Haw. 213, 223 (1953); *Henderson v. Pence,* 50 Haw. 162, 163, 434 P.2d 309, 310 (1967). Collateral estoppel also precludes relitigation of facts or issues previously determined when it is raised defensively by one not a party in a prior suit against one who was a party in that suit and who himself raised and litigated the fact or issue.

3. Trustee for debtor, in his attempt to circumvent the well-established principles of res judicata and collateral estoppel, cites the United States Supreme Court case of *Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939). There, the Supreme Court reversed a judgment of the Circuit Court of Appeals for the Fourth Circuit which held that a bankruptcy court was forbidden to re-examine an earlier state court ruling under the doctrine of res judicata. However, the Supreme Court's basis for not applying the doctrine of res judicata was that the validity of the underlying claim in the state court was not in

issue in the bankruptcy proceeding. *Pepper*, at 302, 60 S.Ct., at 242. The Court wrote at 303, 60 S.Ct. at 243,

> It is therefore plain that the issue which the bankruptcy court later considered was not an issue in the trial of the cause in the state court and could not be adjudicated there. Hence, the failure on the part of Litton to establish that the state judgment was res judicata ... left the bankruptcy court with full authority to follow the course it took and to determine the validity of Litton's alleged secured claim.... (Emphasis added.)

4. The Trust, in its memorandum in support of its claims, cites *Heiser v. Woodruff*, 327 U.S. 726, 66 S.Ct. 853, 90 L.Ed. 970 (1946) as authority for the proposition that a trustee in bankruptcy who litigates on the issue of fraud in a state court and is unsuccessful is bound by that decision in a subsequent bankruptcy proceeding. In *Heiser*, supra, the Court explained,

> At least *to the extent that the issue of fraud* raised by the objection to petitioner's claim as between petitioner and the bankrupt *has been litigated and decided* before the bankruptcy and has since been litigated *between the petitioner and the trustee in bankruptcy,* who represents the bankrupt and his creditors, *that issue is now res judicata and may not further be litigated in the bankruptcy proceeding.* (Emphasis added.)

*Id.* at 734, 66 S.Ct. at 856. Later at 736, 66 S.Ct. at 857, the Court noted,

> But here the alleged fraud was put in issue and the issue was decided against the trustee, the bankrupt and those whom they represent or who claim under them, for failure of proof. *After two proceedings*, in one of which the bankrupt and in the other of which the bankrupt and his trustee, sought, and were free, to prove that the judgment was based on fraudulently alleged, fictitious values, and in both of *which the decision was against them, the principles of res judicata preclude the revival of the litigation in the bankruptcy court.*

> *Pepper v. Litton, supra,* lends no support to a different view.... *Nor can an attack be sustained on a judgment allegedly procured by fraudulent representations of the plaintiff, when the charge of fraud has been rejected in previous litigations by the parties to the suit* in which the judgment was rendered, or their representatives. (Emphasis added.)

■ Since the basis for the trustee's objections in the instant case are matters which have been previously adjudicated in various state courts, the court herein finds that under the doctrine of res judicata, the trustee for KIKI, Ltd. is precluded from raising the identical defenses as was raised and decided in their state court actions. Likewise this includes the trustee's claims for offsets and a redetermination of the value of the state court judgment liens. Those matters, having been litigated and determined in the state courts, are therefore closed from review by the court herein.

■ This leaves before the court the question as to whether the Westervelt Trust is a secured creditor or a general unsecured creditor.

Hawaii Revised Statutes Section 636–3 provides in part:

> Any money judgment or decree of a state court or the United States District Court for the District of Hawaii shall be a lien upon real property when a copy thereof, certified as correct by a clerk of the court where it is entered, is recorded in the bureau of conveyances....

> In the case of registered land, section 501–102 shall govern.

Section 501–102, H.R.S. provides as follows:

> Every conveyance, lien, attachment, order, decree, instrument, or entry affecting registered land, which would under existing laws, if recorded, filed, or entered in the bureau of conveyances, affect the real estate to which it relates, shall, if registered, filed, or entered in the office of the assistant registrar in the

bureau of conveyances, be notice to all persons from the time of such registering, filing or entering.

Section 501–121, H.R.S. relating to leases which touch and concern registered land provides: "Leases of registered land for a term of one year or more shall be registered."

Finally section 501–101, H.R.S. sets forth the effect of an unregistered lease on land court property. It states in pertinent part:

> *No* deed, mortgage, or other *voluntary instrument,* except a will and a lease for a term not exceeding one year, *purporting to convey or affect registered land, shall take effect as a conveyance or bind the land, but shall operate only as a contract between the parties,* and as evidence of authority to the registrar or assistant registrar to make registration. *The act of registration shall be the operative act to convey or affect the land,* and in all cases under this chapter the registration shall be made in the office of the assistant registrar in the bureau of conveyances, during office hours prescribed in section 502–32. (Emphasis added.)

In *City & County v. A.S. Clarke, Inc.,* 60 Haw. 40, 587 P.2d 294 (1978), the Hawaii Supreme Court affirmed a lower court's decision granting summary judgment in favor of the city and against a successor-in-interest to land court property. Although defendant held a lease proposal letter, no lease was ever executed nor was the letter itself ever registered with the Land Court. In subordinating the defendant's interest to that of the City's, the Court wrote,

> [T]he fact that the 1968 letter was not registered with the Land Court is dispositive of Clarke's status in the proceeding. Thus we conclude that even if the letter was a valid lease, the *failure to register the letter with the Land Court precludes Clarke from asserting any interest against the City with respect to the subject property....* The subject property *was registered with the Land Court....* The letter should thus have *been registered with the Land Court*

*pursuant to H.R.S. § 501–121 (1976).* (Emphasis added.)

*Clarke,* supra, at 44, 587 P.2d 294.

The adjudicated claims and judgment liens acquired by the Trust against the Debtor were all seasonably recorded with the Bureau of Conveyances under the regular system of filing liens pursuant to H.R.S. § 636–3. However, the property to which these demands were to be satisfied is registered land and as such, the claims and judgments held by the Trust should have been documented with the Land Court.

As hereinbefore mentioned in the court's Findings of Fact, KIKI's interest in the land court property arose out of a lease agreement entered into with the lessors. This voluntary instrument was never recorded with the Land Court. Therefore KIKI's interest in the registered land was never perfected. They may have undoubtedly had a contractual arrangement with the lessors, but this compact did not bind the land.

Since KIKI's leasehold interest was never registered with the Land Court and since the claims and judgments held by the Trust likewise were never recorded under this system, the Trust is therefore deemed to be a general unsecured creditor and not a secured creditor with respect to the subject property.

The total amount which the Westervelt Trust claims under its proof of claim is $152,203.45. A Stipulation entered into between the parties that the Trust's claim number five for $25,000.00 is duplicative of an earlier claim will therefore reduce the total claim by this stipulated amount.

■ Claim number four by the Trust, i.e. its judgment on its third-party complaint against KIKI for $3,297.69 plus interest of $434.16, was awarded after the Debtor filed its Chapter 11 bankruptcy petition on April 1, 1975. Under 11 U.S.C. § 362(a)(1) this judgment is in violation of the automatic stay provision and is consequently held void. Hence the total claim is further reduced by the amount of this judgment including interest.

Finally, as to the proper amount of interest the Trust is entitled to recover as a general unsecured creditor, the Court can only grant interest from the date of the acquisition of the judgments until the date the automatic stay became effective, i.e. April 1, 1975. 11 U.S.C. §§ 362, 502(b)(2), *In re Benson*, 33 B.R. 572 (Bkrtcy.Ohio 1983).

With respect to the Rossi judgment, the principle amount of $55,000.00 computed at 6% interest from November 12, 1971 to April 1, 1975, the interest comes out to $11,173.44. In the case of the Courtney judgment, the principle amount being $13,-200.00, the interest, computed at the same interest rate to April 1, 1975, is figured at $1,905.12. For the judgment on the assigned promissory note from Mr. Tateishi for $22,150.00, the calculated interest is determined to be $1,117.48. No interest is sought on the $4,000.00 expended by Westervelt to resecure the Court Broadcasting Stock.

The Court hereby finds that the Trust is eligible to receive the sum of $108,546.04 as an unsecured creditor of the debtor in bankruptcy. This total amount includes interest on the various judgments from the date of such judgments until April 1, 1975, the date of debtor's filing of its bankruptcy petition.