■ CITIBANK, N. A., Respondent, v GAIL LIEBESKIND et al., Defendants. JOSEPH ZELIK, Nonparty Appellant. [656 NYS2d 39] —In a mortgage foreclosure action, Joseph Zelik, as the assignee of the successful bidder at the foreclosure sale, appeals from an order of the Supreme Court, Kings County (Held, J.), dated January 5, 1996, which conditionally granted the motion by BHT Limited, L.P., the successor in interest to the mortgagee, to vacate the foreclosure sale, and denied his cross motion to stay all proceedings pending the final resolution of a related action for specific performance of a contract of sale of the foreclosed property.

Ordered that the order is reversed, on the law, with costs, the motion is denied, the cross motion is granted, and the action is stayed pending resolution of the related action for specific performance.

Citibank, N. A. (hereinafter Citibank), commenced the instant action to foreclose a mortgage on real property located in Kings County. By judgment of foreclosure and sale dated November 16, 1993, a Referee was appointed to conduct the foreclosure sale. The successful bidders at the sale on March 23, 1994, assigned their bid to the appellant, Joseph Zelik. The closing did not take place on or before April 25, 1994, as called for in the terms of sale, and on May 31, 1994, Citibank assigned its rights to the note, mortgage, and judgment to BHT Limited, L. P. (hereinafter BHT). On July 25, 1994, Zelik notified Citibank that upon inspecting the premises, he discovered severe water damage to the property, allegedly caused by broken water pipes on the premises. In January 1995 BHT informed Zelik that by refusing to pay the past due water and sewer rents on the premises he was in breach of the terms of sale. In February 1995 Zelik commenced an action seeking specific performance of the contract of sale with an abatement of the purchase price because of the water damage (hereinafter the specific performance action). Unable to reach a settlement, in October 1995 BHT moved to vacate the foreclosure sale and allow the resale of the premises at public auction. Zelik crossmoved to stay all proceedings pending final resolution of the specific performance action. The court granted the motion by BHT and denied Zelik's cross motion. We now reverse.

The rights and remedies of a buyer and seller of real property with regard to the risk of loss between the time of contract and conveyance are governed by the Uniform Vendor and

Purchaser Risk Act (General Obligations Law § 5-1311), which provides in relevant part:

"1. Any contract for the purchase and sale or exchange of realty shall be interpreted, unless the contract expressly provides otherwise, as including an agreement that the parties shall have the following rights and duties:

"a. When neither the legal title nor the possession of the subject matter of the contract has been transferred to the purchaser: (1) if all or a material part thereof is destroyed without fault of the purchaser * * * the vendor cannot enforce the contract, and the purchaser is entitled to recover any portion of the price that he has paid * * * (2) if an immaterial part thereof is destroyed without fault of the purchaser * * * neither the vendor nor the purchaser is thereby deprived of the right to enforce the contract; but there shall be, to the extent of the destruction * * * an abatement of the purchase price."

The statute has been interpreted so as to allow a purchaser, faced with material damage but who still desires to enforce the contract of sale, to elect between rescission of the contract or an abatement of the purchase price (see, Lucenti v Cayuga Apts., 48 NY2d 530, 541-542; Jewell v Rowe, 119 AD2d 634). This section has been held to apply to judicial sales (see, Onondaga Sav. Bank v Wagner, 101 Misc 2d 109; Geist v State of New York, 3 Misc 2d 714; New York Med. Coll. v 15-21 E. 11th St. Corp., 90 NYS2d 591).

Zelik's affidavit establishes that he inspected the premises on March 31, 1994, and became the assignee of the successful bidder on the following day. He did not document or report any water damage to the premises after this initial inspection. He inspected the premises a second time on May 5, 1994. Again, he neither documented or reported any water damage to the premises. However, immediately following his third inspection of the premises on July 24, 1994, he advised Citibank that he had discovered severe water damage throughout the premises. In March 1995 Zelik hired a consulting engineer to inspect the premises, who concluded that the premises had suffered extensive water damage, and that repairs would cost approximately $40,000. Thus, Zelik presented sufficient evidence to make out a prima facie showing that the premises sustained water damage some time after the judicial sale on March 23, 1994. There was no evidence that the water problem existed at the time of the judicial sale on March 23, 1994, and at no time did Citibank or BHT present any evidence whatsoever to refute Zelik's position that the water damage occurred

sometime between his second inspection of the premises on May 5, 1994, and his third inspection on July 24, 1994. Thus, the only evidence tending to show when the flooding occurred was the uncontradicted affidavit of Zelik detailing the dates on which he inspected the premises.

Significantly, in a letter dated May 4, 1995, counsel for BHT admitted that its property managers were sent to the premises and found that the sewer lines were blocked and backed into the basement toilet and that the gutters and leaders were also blocked. BHT further admitted that there was water in the basement which had to be pumped out. Since BHT admitted that there was a water problem, but questioned whether there existed any residual damage in need of repair, the court should have denied the motion to vacate the foreclosure sale, stayed the foreclosure action so as to prevent closing until there was a judicial determination as to whether Zelik is entitled to an abatement of the purchase price, and allowed the specific performance action to proceed, thereby giving Zelik an opportunity to prove his claim. If repairs are required to restore the premises to the condition existing on March 23, 1994, Zelik is entitled to an abatement. If the problem was corrected, as BHT claimed in May 1995, Zelik should be given the opportunity to purchase the property for the amount of the original bid. Sullivan, J. P., Santucci, Friedmann and McGinity, JJ., concur.