UNITED STATES of America, Plaintiff,

v.

**Juan FABELA–GARCIA, Defendant.**

**No. 88–CR–71 J.**

United States District Court,
D. Utah, C.D.

May 10, 1989.

Richard McKelvie, Stewart C. Walz, Asst. U.S. Attys., Salt Lake City, Utah, for plaintiff.

James Esparza, Murray, Utah, for defendant.

1. For a more complete exposition see court order in this matter filed June 22, 1988.

MEMORANDUM OPINION
AND ORDER

JENKINS, Chief Judge.

The matter before the court concerns a rather novel jurisdictional question raised by the United States in answer to the defendant's motion, filed pursuant to Fed.R. Crim.P. 41(e), for the return to him of property unlawfully seized by a state officer in connection with what ultimately became a federal prosecution. The facts are summarized as follows [1]:

On April 27, 1988 an officer of the Utah Highway Patrol observed the defendant driving a 1978 Mercury Cougar east on Interstate 70 at a speed of fifty to fifty-five miles per hour in a zone where the speed limit is sixty-five miles per hour. Finding this behavior suspicious, the officer tailed the defendant and then radioed for another officer to take over following the defendant. After being followed for thirty-five miles the defendant was stopped for improper lane travel—not moving to the right lane after passing a sign indicating that the left lane was for passing only. Other than the patrol car there were no other vehicles on the road. The officer took the defendant's license and registration and wrote a citation. The officer who had first observed the defendant arrived on the scene, and after conversing with the defendant, the officers searched the car. Fourteen kilograms of cocaine and $18,855 in United States Currency were found in the vehicle and nine grams of cocaine were found on the person of the defendant. The defendant was arrested and the vehicle, cocaine, currency, and other items found in the car were seized. The state officer and the state prosecutor, through the Drug Enforcement Administration ("DEA"), a federal agency, brought the matter to the United States Attorney seeking federal prosecution. This appears to have been done pursuant to a rather loose and ill-defined arrangement between the United States Attorney and certain local county attorneys [2]. The arrangement is not writ-

2. This agreement was first referred to by the government in its answer to the defendant's

ten but oral, and is not consented to by all of the prosecutors. Part of this agreement seems to be that the federal government will prosecute in federal court any pipeline stop involving a quantity of drugs sufficient to invoke a federal mandatory minimum sentence [3]. Transcript of evidentiary hearing held December 22, 1988 ("Transcript") at 23–24. Many (but not all) of the counties involved in the arrangement are located along Interstate 70 where most of the pipeline stops occur. In these cases, property other than contraband is generally left to the state to endeavor to forfeit.

The state-originated case was brought to the United States Attorney for federal prosecution. The local prosecutor appears to have deferred the prosecution to the United States and did not participate. On April 28, 1988 a grand jury returned an indictment on two counts—possession with intent to distribute in violation of 21 U.S.C. § 841(a)(1), and possession in violation of 21 U.S.C. § 844(a). The government testified that in such cases the federal government has control of the case from the time the charge is filed. Transcript at 23. The United States Attorney, through assigned assistants, made all of the decisions during the early stages of the case, including the selection and calling of witnesses.

On May 31, 1988 the defendant filed a motion to suppress and an evidentiary hearing was held on June 14, 1988 [4]. Unfortunately for the prosecution, the manner in which the arrest was effected was found to violate the Fourth Amendment of the Constitution, and the evidence obtained was thereby suppressed [5]. The specific arrest sequence appears not to have been brought to the attention of the United States Attorney until sometime after the indictment had been issued at the insistence of the DEA pursuant to the loose arrangement among some law enforcement officials on a federal and state level.

On September 30, 1988 the court granted the government's motion to dismiss the federal charges. On October 5, 1988 the defendant filed a motion for return of the property seized pursuant to Fed.R.Crim.P. Rule 41(e) [6]. The court heard arguments on the defendant's motion on November 23, 1988. A further hearing was held on December 22, 1988 in an effort to flesh out the relationship of the United States and the local prosecutors. Having considered the file, the evidence therein, and the arguments of counsel, the court finds that it has jurisdiction to hear the defendant's motion.

District courts have jurisdiction to enter orders ancillary to a criminal proceeding concerning disposition of materials seized in connection with the criminal investigation of a case. *U.S. v. Wingfield*, 822 F.2d 1466, 1470 (10th Cir.1987). Ancillary jurisdiction derives from the notion that a federal court acquires jurisdiction of a case or controversy in its entirety. *Jenkins v. Weinshienk*, 670 F.2d 915, 918 (10th Cir. 1982). The government acknowledges that this case began as a federal prosecution and that the defendant's motion concerns property seized in connection with the crim-

motion for return of property seized. In its answer the government stated that it would not move to forfeit the property, "... deferring to the Emery County Attorney, pursuant to an agreement between the United States Attorney and the Statewide Association of Prosecutors." The arrangement was further clarified in an evidentiary hearing of December 22, 1988 held by the court in an attempt to better understand what agreement, if any, existed, and to attempt to reconcile the seemingly contradictory position of the United States in bringing the case to federal court and then arguing that the court did not have jurisdiction over the property seized.

**3.** A "pipeline" case refers to a case involving the transportation of drugs by automobile from one source city to another.

**4.** During the hearing the prosecution could not direct the court to any traffic statute violated by the defendant, nor was the citation itself in evidence.

**5.** The government then filed an appeal which was subsequently dismissed.

**6.** Rule 41(e) provides in part:

(e) **Motion for Return of Property.** A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to lawful possession of the property which was illegally seized. The judge shall receive evidence on any issue of fact necessary to the decision of the motion.

inal proceeding. The Tenth Circuit has ruled that in such circumstances "the district court does have the jurisdiction to enter an order concerning the disposition of seized property in its control." *U.S. v. Wingfield*, 822 F.2d 1466, 1470 (10th Cir. 1987)[7]. In the case at bar the government has acknowledged that the property was illegally seized and that it should be returned to the defendant. Transcript at 32. The government argues, however, that *Wingfield* does not apply to this situation because the property in question is not, and has never been, within the court's "control." The property was seized by the Utah Highway Patrol and placed with the Utah Department of Public Safety. Although the government admits that it intended to introduce into evidence the fact that the automobile and currency existed, it argues that the actual physical property is not within the jurisdiction of the court because it never introduced or intended to introduce it into evidence. The government suggests that this court deny the defendant's motion and defer to the Utah Seventh Judicial District Court in Emery County, in which a forfeiture action concerning the property was filed, almost a month after the defendant's motion for return of property, and seven months after the criminal proceeding began.

The court is not persuaded by the argument of the United States. In arguing that the court does not have jurisdiction because the physical property is in the physical possession of a state agency not a party to this action, the government ignores a concept used frequently in law, that of constructive possession, of having the power of control although someone else may actually have physical possession. The state prosecutor, through his arrangement with the United States Attorney, deferred to the United States in *all* aspects of the prosecution; the return of property unlawfully seized is an indivisible aspect of that process and of that deferral. It is the United States Attorney who makes the decision whether or not to initiate prosecution, and it is with the United States Attorney that the decision-making is concentrated with respect to all aspects of the prosecution of the deferred case. No one has suggested that such deference has been withdrawn by the local prosecutor. Loose and flexible as some of the "arrangement" may be, no one has suggested that the United States has modified the general agreement of deferral. The court finds that the prosecutor, through its control of the case, through filing the indictment in federal court and through the informal agreement with the state prosecutors, has constructive possession of the property[8].

There is, as well, a more important question separate from the argument of the prosecution, and that is the power and ne-

---

7. Other courts have held that in such instances a district court "has both the jurisdiction and the duty to ensure the return of such property." *U.S. v. Wright*, 610 F.2d 930 (D.C.1979), citing *U.S. v. Wilson*, 540 F.2d 1100 (D.C.1976); *U.S. v. Premises Known as 608 Taylor Avenue*, 584 F.2d 1297 (3rd Cir.1978); *U.S. v. LaFatch*, 565 F.2d 81, 83 (6th Cir.1977), *cert. denied*, 435 U.S. 971, 98 S.Ct. 1611, 56 L.Ed.2d 62 (1978).

8. In support of its position the government relies on *United States v. $79,123.49 in United States Cash and Currency*, 830 F.2d 94 (7th Cir. 1987). In that case the State filed an action in state court seeking the forfeiture of currency found on the defendants at the time of their arrest for attempting to purchase marijuana from a state undercover agent. The court dismissed the action on the grounds that the state had failed to comply with a statutory time limitation and ordered that the money be placed with the clerk of courts, and then ordered the clerk of courts to deposit the money with the

defense counsel. Before the money could be deposited with counsel, however, the money was seized by a United States Marshall pursuant to a writ of seizure and placed in a seizure asset account of the district court. In determining which court had jurisdiction, the Seventh Circuit found that the state court, in first assuming jurisdiction, maintained it to the exclusion of the federal court. 830 F.2d at 96. In so holding it noted that the fact that the federal court now possessed the property "in no way lessened the state court's need for control over the property in order to effectuate its orders." 830 F.2d at 98. This court finds this case distinguishable from the case at bar in that it deals with two forfeiture actions in a fact situation different from the case at bar. This reservation aside, the court finds that the Seventh Circuit's acknowledgment of a court's need to effectuate its orders and its refusal to equate physical possession with control is more supportive of the court's finding of jurisdiction than it is of the prosecution.

cessity of a court which enters an order to vindicate and enforce the consequences of its own order[9]. This is especially important when dealing with orders concerning the observance and vindication of Constitutional standards. It is symbolized by Federal Rule 41(e) to enable the federal forum to give complete relief when an order of suppression is granted, including the return of unlawfully seized property.

The defendant's motion concerns property which was seized in violation of the Fourth Amendment. The government has dismissed its case against the defendant. The government has acknowledged the necessity of vindicating the Constitution, that the defendant is the rightful owner of the property, and that the property should be returned to the defendant. The jurisdiction of the court over the government in this case is undisputed. The court finds that the government has control of the property.

The United States Attorney is ordered to return or cause to be returned to the defendant all non-contraband property unlawfully seized. The United States Attorney is ordered to take such steps as may be necessary, alone or in concert with counsel for the defendant, to cause, if need be, all persons failing to follow the direction of the United States Attorney in connection with this case, to appear before this court in this case to show cause, if any, why the property should not be returned.

The court further orders the United States Attorney to certify his actions taken pursuant hereto within ten days.

IT IS SO ORDERED.

---

9. From Transcript of December 22, 1988 hearing, page 32:

Court: But you indeed have an interest in making sure that the Fourth Amendment was vindicated.

Govt: If it were within our control to do so, we would do everything humanly possible to see that the interest is vindicated.

Court: Now, what you're suggesting here, as I understand it, is that since the United States has never had physical possession of the non-contra-band assets that were taken in violation of the Fourth Amendment, that the person who was prosecuted initially by the United States should seek return of that property from someone other than The United States.

Govt: That's correct, Your Honor. And under the circumstances of this case, I am certain that the Defendant would succeed in obtaining a return of that asset—because of the nature of this Court's prior ruling.