62 F.3d 1418
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Demetrius LEE, Defendant-Appellant.
 No. 94-3564.
 United States Court of Appeals, Sixth Circuit.
 Aug. 1, 1995.
 
 Before: BOGGS and BATCHELDER, Circuit Judges; and QUIST, District Judge.*
 PER CURIAM.
 
 
 1
 Demetrius Lee appeals the district court's conclusion after remand that it lacked jurisdiction in his action to consider his motion for the return of seized property under Federal Rule of Criminal Procedure 41(e). For the reasons that follow, we affirm.
 
 
 2
 * On April 2, 1990, a police informant made a controlled buy from Lee at his Lorain, Ohio, residence, observed by the Elyria Police Department. As the officers were procuring a search warrant, Lee departed, and the police lost him in traffic. Police did not execute the search warrant for Lee's home until the next day, when they recovered $31,000 in cash. They also found a kilo of cocaine in a vehicle parked outside the house. The vehicle was registered to Lee's brother; Lee later testified that the cocaine was indeed his. That same day, Lee was spotted at his girlfriend's residence in Elyria. Police obtained an arrest warrant for Lee, as well as a search warrant for his girlfriend's residence, where they found $53,064, a small amount of cocaine, a gun, records, and some personal items.
 
 
 3
 After his arrest, Lee claimed that the police did not allow him to make a telephone call or contact an attorney until after the search of his residence was complete. During this interval, Lee described his drug trafficking activities and identified Anthony Horn as his supplier. Lee also alleged that state police detained him at a motel room in a nearby municipality in order to arrange a meeting with Horn.
 
 
 4
 On April 24, 1990, the state of Ohio indicted Lee for engaging in a pattern of corrupt activity, aggravated trafficking in drugs, and possession of criminal tools. The true bill also contained a count for criminal forfeiture of three vehicles, $84,064 in cash, three safes, a cellular telephone, and a set of scales. Ohio Rev.Code Ann. Sec. 2923.32(B)(3) (Baldwin 1994).
 
 
 5
 After further investigation of Lee, federal authorities indicted him on January 8, 1991, for participating in a drug conspiracy. The United States never instituted forfeiture proceedings against Lee.
 
 
 6
 On March 28, 1991, Lee filed a motion in the federal proceeding to suppress the seized evidence, as well as statements made to Elyria police after his arrest. The court held a hearing on the motion on April 18, where the government agreed to drop Overt Acts Four and Five from the indictment, thus eliminating the need for the court to decide the motion. Lee was convicted in state court on May 13, 1991, and the property was forfeited to the state of Ohio.
 
 
 7
 On June 4, 1991, a jury in federal court found Lee guilty of two counts of knowingly distributing cocaine, in violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2, and one count of conspiracy to distribute cocaine, in violation of 21 U.S.C. Sec. 846. Lee unsuccessfully appealed his conviction to this court, but we remanded for the district court to rule on his motion for the return of money and other property. United States v. Lee, No. 91-3833, 1994 WL 20089 (6th Cir. Jan. 21, 1994), cert. denied, 114 S.Ct. 2117 (1994). This court clearly stated the issues to be resolved by the district court:
 
 
 8
 Although the government argues that the federal government was not involved in the initial investigation of this defendant nor the seizure of his property, we do not assume lack of jurisdiction merely because state authorities seized the res pursuant to a search warrant. The record is unclear as to whether there were any state in rem proceedings pending against the property that would prevent in rem jurisdiction in the federal court. Similarly, we are unable to discern from the record whether the government had actual or constructive possession of the property....
 
 
 9
 Id. at * 3 (citations omitted, emphasis added).
 
 
 10
 On remand, the district court held that it lacked jurisdiction over Lee's property because the property was already subject to the state's jurisdiction, and that the federal government never had actual or constructive possession of the property. Lee appeals both determinations.
 
 II
 
 11
 A district court's conclusions of law are subject to de novo review on appeal. United States v. Braggs, 23 F.2d 1047, 1049 (6th Cir.), cert. denied, 115 S.Ct. (1994); Whitney v. Brown, 882 F.2d 1068, 1071 (6th Cir.1989). An appellate court must review the evidence "in the light most likely to support the district court's decision." Braggs, 23 F.2d at 1049, citing United States v. Gomez, 846 F.2d 557, 560 (9th Cir.1988). An appellate court will not disturb a lower court's finding of fact unless clearly erroneous. Fed.R.Civ.P. 52(a). "This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently." Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985).
 
 
 12
 Lee first argues that he was convicted as a result of a joint federal-state investigation, so "the government perforce acquired the right to make plenary use of any and all evidence that could be related to those charges." However, Lee has failed to identify any proof of federal-state coordination. If anything, the state police "stumbled onto" Lee's drug dealing through the controlled buy on April 2; in contrast, federal authorities convicted Lee for his role in an extensive narcotics conspiracy based on separate conduct--Lee was charged with five other illegal acts committed after the April 2, drug sale. Even assuming that the federal government did possess the right to use the evidence, it did not in fact acquire, control, or use any evidence seized by state authorities. A review of the original and superseding indictments reveals that the federal charges against Lee were based on information and acts independent of the April 2 arrest and subsequent seizure.
 
 
 13
 Lee also argues that the district court had ancillary jurisdiction over the seized property unless a state in rem proceeding deprived the federal court of jurisdiction before the government moved to delete from the indictment the two overt acts involving disputed evidence. Lee notes that "the first Court to exercise in rem jurisdiction over the res exercises jurisdiction to the exclusion of a second court that later attempts jurisdiction...." Penn Gen. Casualty Co. v. Pennsylvania, 294 U.S. 189 (1934). The government claims that it sought deletion of the two acts in order to allow Ohio to prosecute under its criminal RICO statute; Lee claims that they were dismissed because the government knew they were the result of an unconstitutional search. Regardless of the reason for the dismissal, Lee argues that until the Assistant United States Attorney agreed to dismiss the two overt acts, the seized evidence was relevant to the government's case and the court possessed ancillary jurisdiction over the property.
 
 
 14
 Lee admits that Ohio initiated criminal forfeiture proceedings on April 24, 1990, but contends that this created in personam jurisdiction, not in rem jurisdiction--the state's jurisdiction would vest only after the verdict on May 13, 1991. However, if the mere listing of an overt act in the federal indictment, without mention of the seized evidence, is enough to vest a federal court with in rem jurisdiction, then the listing and detailed description of Lee's property in the state's indictment would likewise create state jurisdiction at an even earlier time. In that case, an Ohio court was the first to have jurisdiction. Moreover, it is undisputed that the property has at all times been in the possession of state authorities.
 
 
 15
 Lee also urges this court to find that the federal government had constructive possession of the seized evidence, and he relies upon United States v. Fabela-Garcia, 753 F.Supp. 326 (D.Utah 1989). The defendant in that case was pulled over, allegedly for a traffic violation, and police seized over fourteen kilograms of cocaine, $18,855 in cash, and several other items. However, the evidence was suppressed because the initial stop violated the Fourth Amendment, and Fabela-Garcia moved for the return of his property.
 
 
 16
 In Fabela-Garcia, the court exercised jurisdiction over property held by the Utah Highway Patrol because a state prosecutor "through his arrangement with the United States Attorney, deferred to the United States in all aspects of the prosecution," thus giving the federal government constructive possession of the res. 753 F.Supp. at 328. The state had an informal but effective agreement with federal authorities that the United States would prosecute all drug cases involving enough contraband to invoke a federal mandatory minimum sentence. Id. at 326-27. The state never indicted Fabela-Garcia, and only began forfeiture proceedings seven months after the federal indictment and one month after he filed suit for the return of the property. Id. at 328.
 
 
 17
 The differences between the type and degree of state involvement in this case and Fabela-Garcia counsel against a finding of constructive possession, even if Fabela-Garcia is good law. Here, Ohio did not acquiesce to federal government jurisdiction, as did the state authorities in Fabela-Garcia, thus relinquishing to the United States full control of the case. Ohio not only initiated criminal and civil proceedings against Lee before the United States, but it never abandoned them, convicting Lee and forfeiting his property two weeks before the start of his trial on federal charges.
 
 
 18
 Additionally, the seized property in Fabela-Garcia could be used in but one criminal prosecution, so that once a federal indictment was issued, the state had no reason to keep the property--it then became a mere custodian for the United States. The fact that Utah did not initiate criminal forfeiture proceedings against Fabela-Garcia until several months after the federal government dropped the indictment only highlights the shared nature of the seized property. The main similarity between the two cases is that the state maintained full possession of the property at all times.
 
 III
 
 19
 We hold that because state authorities had original and exclusive possession of the seized property, the United States could not possess ancillary jurisdiction over the property. Further, the district court's factual findings that there was no joint federal-state undertaking and that the United States lacked actual or constructive possession of the disputed property are not clearly erroneous. Therefore, we AFFIRM the district court's decision.
 
 
 
 *
 The Honorable Gordon J. Quist, United States District Judge for the Western District of Michigan, sitting by designation