680 F.2d 671
 James KNAEFLER, Court-Appointed Receiver for the Pacific
Prince Hotel, Plaintiff
v.
Charles MACK and Janice Mack, dba Ancestral Arts,
Defendants/Third-Party Plaintiffs-Appellants,
v.
Lester O. IRISH, Fred M. Packard, Petrous Industries, Inc.,
and Petrous Hotels, Inc., Third-Party Defendants-Appellees
PETROUS HOTELS, INC., a Hawaii corporation, Plaintiff-Appellee,
v.
Charles MACK and Janice Mack dba Ancestral Arts,
Defendants-Appellants.
 Nos. 81-4047, 81-4048 and 81-4164.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 9, 1982.
Decided July 2, 1982.
 
 Wesley H. Sakai, Jr., Honolulu, Hawaii, for defendants/third-party plaintiffs-appellants.
 T. Irving Chang, Honolulu, Hawaii, for plaintiff.
 Appeals from the United States District Court for the District of hawaii.
 Before FARRIS, FERGUSON and NELSON, Circuit Judges.
 NELSON, Circuit Judge:
 
 
 1
 The claims underlying these appeals arose in the Hawaii state courts when appellees Petrous Industries and Petrous Hotels[1], who had purchased at a foreclosure sale a leasehold interest in the Pacific Prince Hotel in Honolulu, sought a writ of ejectment against appellants Charles and Janice Mack, who operate a business in one of the hotel's shops. The Macks removed the Hawaii ejectment proceedings to district court. Applying Hawaii law in this diversity case, the district court found that the Macks' alleged fifteen year sublease of the shop did not entitle them to possession of the shop because that subleasehold interest was not recorded on the Torrens title registration certificate when Petrous purchased the hotel. Summary judgment was granted in favor of Petrous.
 
 
 2
 The Macks have appealed on several grounds. Specifically, the Macks argue that the district court lacked subject matter jurisdiction because the Hawaii Supreme Court acquired jurisdiction of several appeals concerning the foreclosure sale at which Petrous had purchased its interest in the hotel, before the district court acquired jurisdiction over the removed ejectment claims. The Macks argue that both the foreclosure and the ejectment actions are in rem or quasi in rem proceedings concerning the same property, and thus, the federal court should have stayed its proceedings while the Hawaii courts had control over the property.
 
 
 3
 The Macks also argue that the district court abused its discretion by not granting a stay of the removed claims when decisive issues of state law were allegedly unsettled and that their federal due process rights were violated because they were not given notice nor were they permitted to intervene in the foreclosure proceedings. Finally, appellants argue that the district court, in determining that the Macks had no right to possession, wrongly applied Hawaii law.
 
 
 4
 We conclude the following: ejectment is an in personam action and the district court therefore had subject matter jurisdiction over the claims removed by the Macks to federal court; the district court did not abuse its discretion in failing to stay the federal proceedings during the pendency of the Macks' state court appeals; failure to notice the Macks or to join them in the foreclosure action did not violate their due process rights in any way; and the district court correctly applied the law of Hawaii. We affirm the judgments of the district court.
 
 FACTS AND PROCEEDINGS BELOW
 
 5
 Appellants Charles and Janice Mack, who were defendants and third-party plaintiffs in the district court actions now consolidated on appeal, do business as Ancestral Arts, occupying shop 103 in the Pacific Prince Hotel in Honolulu, Hawaii. The Macks first came to occupy those premises as the result of a sub-sublease from Gordon Cook, dba Waikiki Hardware, who had received a sublease for shop 103 from Aina Alii, Inc., the lessee of the hotel. The Macks' sublease was for a term of three years ending September 30, 1976.
 
 
 6
 On September 18, 1975, foreclosure proceedings were initiated against Aina Alii in Hawaii No. 46176. A lis pendens was filed against the hotel. About this time, Income Builders, Inc. succeeded to Aina Alii's interest and also became a defendant in the foreclosure proceedings.
 
 
 7
 The Macks argue that on October 27, 1975, they entered into a letter agreement with Income Builders to extend their lease of shop 103 for a term of 15 years. In February, 1977, the Macks say they were assured by the attorney for Income Builders that they would receive a new lease in recordable form. They did not.
 
 
 8
 Because James Knaefler, the court-appointed receiver in the foreclosure proceedings, was unsure whether the Macks' claims were enforceable, he filed a motion for instructions with the Hawaii Circuit Court on June 21, 1979. The Macks' attorney appeared at the hearing on the motion and requested an evidentiary hearing in connection with the dispute over the Macks' leasehold rights. The state court declined to hold a hearing and ordered the property sold without the Macks' lease. At a public auction of the hotel, conducted on August 21, 1979, the high bid was made by Petrous Industries, Inc., who took title in the name of a nominee, Petrous Hotels, Inc.
 
 
 9
 The sale was confirmed by the Hawaii Circuit Court on August 31, 1979, passing title free and clear except for specified encumbrances, not including the Macks' alleged subleasehold interest. The Macks, who had never been named as parties or served in Hawaii No. 46176, filed appeals in connection with the receiver's motion for instructions and the formal order granting instructions to the receiver. They then filed motions for intervention in Hawaii No. 46176 and for reconsideration of the confirmation of sale. The Hawaii Circuit Court's denials of these motions were also appealed.[2]
 
 
 10
 On August 2, 1979, the receiver filed a complaint for summary possession in the Hawaii courts, seeking to dispossess the Macks and to obtain a judgment for rent. The Macks removed this case to the United States District Court, and filed a counterclaim against the receiver, the principals of Income Builders, Petrous Industries, and Petrous Hotels. On March 18, 1980, Petrous Hotels filed a counterclaim against the Macks for ejectment.
 
 
 11
 On February 18, 1980, Petrous Hotels filed a complaint for ejectment in the Hawaii courts against the Macks. The Macks removed this case, as well, to district court and filed a counterclaim against Petrous Hotels.
 
 
 12
 The receiver filed a motion for partial summary judgment in the first district court case, No. 79-0346. A hearing was held on August 11, 1980, and on November 25, 1980, the Magistrate recommended that the receiver's motion should be granted for rents in the sum of $30,526.08. This report was approved by the district court subject to objection by the parties within 10 days of date of receipt. Partial summary judgment was entered on November 25, 1980. The district court subsequently declared the partial summary judgment interlocutory as the Macks' counterclaims against the receiver and Income Builders were still being litigated.
 
 
 13
 Petrous followed the receiver's lead and filed for summary judgment in both cases before the district court. In the interests of judicial economy, a consolidated hearing was held, following which Petrous was granted summary judgment on both motions. The Macks' cross-motions for summary judgment were denied.
 
 
 14
 On January 19, 1981, the district court issued an order and judgment in No. 79-0346, denying the Macks' motion for summary judgment, granting Petrous' motion, and ordering a writ of ejectment. That order is the subject of the appeal in this court's No. 81-4047. A similar order was issued in No. 80-0288 on the same date and is the subject of the appeal in this court's No. 81-4048. On March 9, 1981, the district court issued an order consolidating the two district court cases, issued a stay pending appeal, effective upon the Macks' posting of a $10,000 bond and the payment of $1100 per month for the period commencing January 19, 1981. This March 9, 1981, order is the subject of the appeal in this court's No. 81-4164. The appeals from all three orders have been consolidated before this court.
 
 ISSUES
 
 15
 The following issues are presented by these consolidated appeals:
 
 
 16
 (1) Did the district court lack subject matter jurisdiction because concurrent proceedings in state and federal court were both in rem or quasi in rem actions regarding the same property?
 
 
 17
 (2) Did the district court abuse its discretion in failing to stay the federal proceedings pending a resolution of related proceedings in the Hawaii courts?
 
 
 18
 (3) Were the Macks deprived of their property without due process of law?
 
 
 19
 (4) Did the district court err in its construction of the substantive law of Hawaii?
 
 DISCUSSION
 
 20
 I. DID THE DISTRICT COURT LACK SUBJECT MATTER JURISDICTION
 
 BECAUSE CONCURRENT PROCEEDINGS IN STATE AND
 FEDERAL COURT WERE BOTH IN REM OR QUASI
 IN REM ACTIONS REGARDING THE
 
 21
 SAME PROPERTY?
 
 
 22
 Where concurrent proceedings in state and federal court are both suits in rem or quasi in rem, the court first assuming jurisdiction over the property[3] may maintain and exercise that jurisdiction to the exclusion of the other. Princess Lida of Thurn and Taxis v. Thompson, 305 U.S. 456, 466, 59 S.Ct. 275, 280, 83 L.Ed. 285, 291 (1939); Kline v. Burke Construction Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226 (1922).
 
 
 23
 While it seems fairly clear that the foreclosure proceedings appealed from in the Hawaii courts are proceedings in rem, 1A (part 2) J. Moore, W. Taggart, A. Vestal & J. Wicker, Moore's Federal Practice, P 0.214, at 2359-60 & n.6 (2d ed. 1982), it is not at all clear that ejectment proceedings are similarly in rem or quasi in rem. The parties to these appeals take opposite positions on whether, under Hawaii law, ejectment actions are in rem, quasi in rem, or in personam. The Macks argue that ejectment is an in rem action so that, under the Princess Lida rule, the district court lacked jurisdiction to proceed. If, as Petrous argues, the ejectment proceedings are in personam actions under Hawaii law, the district court properly could have proceeded to adjudicate the claims before it. Princess Lida, 305 U.S. at 466, 59 S.Ct. at 280, 83 L.Ed. at 291; 14 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, § 3631, at 19 (1976).
 
 
 24
 Neither side has cited judicial authority from any jurisdiction, especially Hawaii, in support of its respective position on this issue. This court has itself unearthed few references to the nature of the ejectment action and none involve Hawaii law.[4]
 
 
 25
 Although questions of law ordinarily are freely reviewable on appeal, where there is no definitive guidance from the state's highest court, substantial deference is accorded to the district judge's interpretation of the law of the state in which he sits. This construction of state law will be accepted on review unless it appears to be clearly wrong or clearly erroneous. Gaines v. Haughton, 645 F.2d 761, 770 (9th Cir. 1981), cert. denied, --- U.S. ----, 102 S.Ct. 1006, 71 L.Ed.2d 297 (1982). The difficulty here is that the district court did not confront the jurisdictional issue directly. Although the issue was briefed by the parties, the matter was not discussed during the district court's consolidated hearing on the respective motions for summary judgment, and the court filed no memoranda in support of its subsequent orders and judgments. By implication, however, the district court must have concluded that under Hawaii law ejectment is an in personam action; otherwise, the district court would have lacked subject matter jurisdiction.
 
 
 26
 With this minimal guidance in mind, we independently examine the applicable law. In Lefkowitz v. McQuagge, 296 F.2d 50 (5th Cir. 1961), the court said of Florida law:
 
 
 27
 It may be that a bill to quiet title proceeding is quasi in rem, and that the court first acquiring jurisdiction of the res does so to the exclusion of others, as a matter of comity; yet the ejectment suit here is in personam and thus this rule is not applicable, unless it is the same proceeding as that to quiet title. That it is not the same proceeding is clear from the statute ....
 
 
 28
 Id. at 52 (emphasis added) (citations omitted). But see Pelletier v. Northbrook Garden Apartments, 233 Ga. 208, 210, 210 S.E.2d 722, 724 (1974) (dispossessory action, a descendant of old ejectment action, arguably quasi in rem proceeding).
 
 
 29
 In Hawaii, ejectment "may try the title to land and (or) the right of possession to it." Oahu Lumber and Building Co. v. Ah Yok, 11 Hawaii 416, 418 (1898). It thus appears possible for a plaintiff merely to determine the right to possession as between himself and another, an action we believe to be in personam, as suggested by Lefkowitz. We note that under Hawaii law even bills to quiet title are deemed to be in personam actions. In re Vockrodt, 50 Hawaii 201, 436 P.2d 752 (1968). Our review therefore leads us to conclude that the ejectment claims at issue here are in personam actions under Hawaii law. Thus, the district court had subject matter jurisdiction of the removed claims.[5]
 
 
 30
 II. DID THE DISTRICT COURT ABUSE ITS DISCRETION IN FAILING
 
 TO STAY THE FEDERAL PROCEEDINGS PENDING A
 RESOLUTION OF RELATED PROCEEDINGS IN THE
 
 31
 HAWAII COURTS?
 
 
 32
 The Macks argue that, even if these actions were not required to be stayed under the Princess Lida rule, the district court should have exercised its discretion to stay the federal proceedings because unsettled issues of state law could be dispositive of the federal claims.[6] Ordinarily, the pendency of substantially similar causes of action in state and federal courts does not require the federal court to stay its proceedings. E.g., Colorado River Water Conservation District v. United States, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483, 498 (1976)[7]; Butler v. Judge, 116 F.2d 1013, 1015 (9th Cir. 1941). Whether the district court should have stayed the federal proceedings is reviewed under the abuse of discretion standard. Butler, 116 F.2d at 1016.
 
 
 33
 Although jurisdiction was first obtained by the state courts, none of the factors set forth in Colorado River appears to be implicated strongly in these appeals. Moreover, we note that the difficulties in reaching a final decision on the claims now before us have arisen because of the Macks' removal of the claims to federal court. Although citizens of foreign states may sometimes rightly feel that they receive more dispassionate hearings in federal court, we find it disingenuous for the Macks to remove the claims from the state courts and then ask the federal court to stay its proceedings because dispositive issues of state law remain unsettled.
 
 
 34
 Finally, we believe that the refusal of the district court to stay its proceedings aided both in controlling its docket and in saving time and effort for the litigants. See Mottolese v. Kaufman, 176 F.2d 301, 302-03 (2d Cir. 1949). We therefore hold that the district court did not abuse its discretion in refusing to stay its proceedings.
 
 
 35
 III. WERE THE MACKS DEPRIVED OF THEIR PROPERTY WITHOUT DUE
 
 
 36
 PROCESS OF LAW?
 
 
 37
 The Macks argue that they were deprived of due process because they did not receive notice of the initial state court foreclosure proceedings and because they were not allowed to intervene in those actions. They argue that this materially affected their rights because the actions of the Hawaii Circuit Court "purported to cancel (the Macks') property rights."
 
 
 38
 This argument is wholly frivolous. It is clear that the title granted by the Hawaii Circuit Court involved only the title held by the selling party at the foreclosure. Resolving what interest, if any, the Macks had was left for future determination. See Employees' Retirement System v. Aina Alii, Inc., --- Hawaii ----, 643 P.2d 65, 68-69 (1982). That future determination was made in federal district court. There the Macks had ample opportunity to litigate the merits of their claims. We see no denial of due process.
 
 
 39
 IV. DID THE DISTRICT COURT ERR IN ITS CONSTRUCTION OF HAWAII LAW?
 
 
 40
 The balance of the Macks' arguments on appeal concern the district court's application of Hawaii law. These arguments, too, are without merit.
 
 
 41
 Hawaii law is clear that an unregistered letter agreement to extend the sublease on shop 103, even if construed to be a valid lease for the purpose of argument, is not sufficient to allow the beneficiary of that agreement to assert any interest in the subject property. City and County of Honolulu v. A. S. Clarke, Inc., 60 Hawaii 40, 44, 587 P.2d 294, 297 (1978). The ordinary effect of a failure to register a leasehold interest of a term exceeding one year in land court property is that every subsequent good faith purchaser for value takes free from the unregistered interest. Id. at 44-45, 587 P.2d at 297-98.
 
 
 42
 The Macks' claim that Petrous was not a good faith purchaser because the Macks were not named as a party or served in the foreclosure proceedings appears to be a futile rehashing of their due process claim, disposed of above. Their failure to register their purported interest is dispositive.
 
 
 43
 Even actual knowledge of an unregistered encumbrance does not disqualify the holder of a registration certificate from the protection afforded him under the land registration statute. Honolulu Memorial Park, Inc. v. City and County of Honolulu, 50 Hawaii 189, 192, 436 P.2d 207, 209 (1967). Thus, the Macks' argument that the lis pendens filed in the state court foreclosure proceedings acted to give Petrous notice of the Macks' claims is immaterial. Hawaii law is clear that, despite any such notice, the filing of the lis pendens operated to give Petrous clear priority over the Macks' unregistered interest. A. S. Clarke, 60 Hawaii at 46, 587 P.2d at 298.
 
 
 44
 Finally, the Macks attempt to rely on Minnesota caselaw stemming from the leading case of Riley v. Pearson, 120 Minn. 210, 139 N.W. 361 (1913). The Minnesota cases cited by the Macks, however, deal only with failure properly to notice or to join holders of unregistered interests in the initial registration of a property under the Torrens statute. E.g., Moore v. Henricksen, 282 Minn. 509, 518, 165 N.W.2d 209, 218 (1968). Similarly, the Macks' reliance on Follette v. Pacific Light & Power Corp., 189 Cal. 193, 208 P. 295 (1922), is misplaced, as it, too, has been limited to defects in original Torrens registration proceedings. Wells v. Lizama, 396 F.2d 877, 881-82 (9th Cir. 1968). We therefore see no merit in the Macks' claims that Hawaii law is unsettled, or that the district court was clearly wrong in its application of that law.
 
 CONCLUSION
 
 45
 Having reviewed Hawaii law, we hold that ejectment is an in personam action in Hawaii. The district court therefore had subject matter jurisdiction and could maintain claims before it while related actions were pending in the Hawaii courts. Moreover, the district court did not abuse its discretion in refusing to stay the claims before it, pending resolution of the related state actions.
 
 
 46
 No significant due process issue was presented by the Macks. The actions of the Hawaii Circuit Court did not affect any property right of the Macks; rather, the Macks' rights were determined by the district court in the claims presently on appeal.
 
 
 47
 The district court was not clearly wrong in its interpretation of the substantive law of Hawaii. The Macks' unregistered interest in shop 103 did not entitle them to possession as against Petrous.
 
 
 48
 AFFIRMED.
 
 
 
 [1]
 Subsequent to the decision of the district court in the pending appeals, an involuntary petition under Chapter 7 of the Bankruptcy Code was filed against Petrous Industries. In re Petrous Industries, Inc., No. 81-10229 (Bankr.C.D.Cal. filed Aug. 14, 1981). In addition, a foreclosure action is pending in Hawaii Circuit Court against Petrous Hotels' interest in the Pacific Prince Hotel. Korea Exchange Bank v. Petrous Hotels, Inc., Civ. No. 66517 (Hawaii Cir.Ct. Mar. 3, 1982) (interlocutory decree of foreclosure). We are therefore uncertain who is the real party in interest for appellees. Notwithstanding, we proceed to decide these appeals. Fed.R.App.P. 43(b): see Fed.R.Civ.P. 25(c); 3B J. Moore & J. Kennedy, Moore's Federal Practice P 25.08, at 25-83 to -84 (2d ed. 1982)
 
 
 [2]
 The Supreme Court of Hawaii has handed down its decision in these appeals. All claims were resolved adversely to the Macks. Employees' Retirement System v. Aina Alii, Inc., --- Hawaii ----, 643 P.2d 65 (1982)
 
 
 [3]
 On appeal, Petrous argues that different subject matter is involved in the state and federal actions because the state foreclosure proceedings concern the entire hotel, while the ejectment actions in federal court concern only the interest in one shop. This argument is meritless, because the proceedings concerning the entire hotel surely include the hotel's shops
 
 
 [4]
 The only authority cited by any party is Petrous' assertion in its opposition to the Macks' motion for summary judgment that the following passage in Am.Jur.2d demonstrates that ejectment is not an in rem action:
 While a judgment in the modern action of ejectment is conclusive upon the parties thereto and those claiming under them, it is binding only upon such persons and does not affect persons not parties, claiming by title existing before the action or anyone not claiming by, through, or under the defendant, such as a stranger in title to the defendant in the action.
 
 
 [25]
 Am.Jur.2d Ejectment § 129 (1966) (footnotes omitted). While this somewhat ambiguous language appears to indicate that ejectment is not an in rem action, it does not appear to eliminate the possibility that ejectment may be a quasi in rem action
 
 
 [5]
 Petrous argues that even if the district court should not have removed these actions because they were within the jurisdiction of the state courts, the doctrines of waiver or estoppel should operate to preclude the Macks from objecting to this defect. In light of our conclusion above, we need not reach this contention. We will, however, point out that this argument is clearly wrong. In general, lack of federal subject matter jurisdiction cannot be waived and the issue of lack of federal jurisdiction may be raised on appeal. Stone v. Stone, 632 F.2d 740, 742 (9th Cir. 1980), cert. denied, 453 U.S. 922, 101 S.Ct. 3159, 69 L.Ed.2d 1004 (1981); see also Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinea, --- U.S. ----, ----, 102 S.Ct. 2099, 2104, 72 L.Ed.2d ---- (1982); 1A J. Moore & J. Wicker, Moore's Federal Practice P 0.157(11), at 136 & n.3 (2d ed. 1982)
 Appellees appear to have confused this doctrine with that which allows defects in the removal process to be waived so long as the federal court would otherwise have jurisdiction. In that event it is clear that the Macks consistently maintained that the district court lacked subject matter jurisdiction over the ejectment claims while the state claims were pending, so that there would be no actual waiver.
 
 
 [6]
 The Macks claim that the following issues were unsettled under Hawaii law: whether, under these circumstances, a purchaser at a foreclosure sale was a bona fide purchaser for value within the meaning of Hawaii Rev.Stat. § 501-82 (1976); whether the title to property purchased at a foreclosure sale is charged "with all claims referred to in the (Hawaii) Circuit Court record where a lis pendens is filed"; and whether a purchaser of less than a fee simple interest is entitled to the benefit of Hawaii Rev.Stat. § 501-82 (1976). To the contrary, these issues are well-settled adversely to the Macks. See part IV infra
 
 
 [7]
 In Colorado River the Supreme Court identified a number of factors that counsel against concurrent proceedings, the most important of which was the enactment of the McCarran Water Rights Suit Act, Pub.L. No. 82-495, 66 Stat. 560 (1952), in which the Court discerned a clear federal policy to avoid piecemeal litigation and to recognize the availability of comprehensive state systems for the adjudication of water rights. 424 U.S. at 818, 96 S.Ct. at 1247, 47 L.Ed.2d at 499. The Court noted that other appropriate factors included the inconvenience of the federal forum and the order in which jurisdiction was obtained by the concurrent forums. Id