**UNITED STATES of America, Plaintiff,**

v.

**$2,542 IN U.S. CURRENCY, Defendant.**

**Civ. A. No. 90–119.**

United States District Court,
D. Vermont.

Dec. 18, 1990.

James J. Gelber, Asst. U.S. Atty., Burlington, Vt., for plaintiff.

Henry Hinton, David Williams, Office of the Defender General of Vt., Montpelier, Vt., for claimant Daniel D'Amico.

## OPINION AND ORDER

PARKER, District Judge.

This case presents the question whether this Court has jurisdiction to hear the Government's complaint for civil forfeiture of a person's property when, at the time it was seized by federal officials, the property was the subject of a Rule 41(e) motion for return of property in state court. We conclude that jurisdiction is lacking and accordingly dismiss the complaint.

## BACKGROUND

On September 6, 1989, Vermont state police obtained a search warrant from the Vermont District Court to search the residence of Daniel D'Amico in Eden, Vermont. The search, executed on the same day, turned up marijuana, paraphernalia and the money that is at issue. D'Amico was arrested at the scene, was subsequently charged by information (on October 30, 1989), and eventually pled nolo to misdemeanor possession of marijuana (on August 24, 1990). After his arrest, a state police officer, believing the money was forfeitable under federal law (see 21 U.S.C. § 881), called the federal Drug Enforcement Administration (DEA) offices and informed an agent of the existence of the money. The state did not itself intend to commence a forfeiture action against the money. D'Amico, unaware of the communication with DEA, moved in state court (Lamoille District Court) for return of the money on September 12, 1989. V.R.Cr.P. 41(e). The hearing on this motion began on September 28, 1989, and was scheduled to continue on October 4, 1989. Before it reconvened, however, state police turned the money over to a DEA agent, without court authorization or prior notice to D'Amico.

D'Amico was notified in December 1989 that the DEA was beginning an administrative forfeiture proceeding against the money. He filed a claim and posted a bond in response and the matter was referred to the U.S. Attorney's office for initiation of judicial forfeiture proceedings, which are now before this Court.

D'Amico has moved to dismiss for want of subject matter jurisdiction, claiming that the seizure of the money by federal authorities during the pendency of state proceedings involving the subject property was unlawful. His argument, essentially, is that once the property was seized pursuant to state warrant, the Vermont District Court assumed jurisdiction over it, which could not be divested by unilateral action of either state or federal agents. Moreover, the money was the subject of an *in rem* proceeding, namely, D'Amico's motion for return, and two courts may not simultaneously assert jurisdiction over the same *res.* The seizure by federal agents was therefore unlawful, and this Court, D'Amico argues, lacks jurisdiction over the matter.

## DISCUSSION

### I.

Two courts may not exercise simultaneous *in rem* jurisdiction over the same *res.* This circuit has recently held

that a federal court may enjoin a state court proceeding "[w]here the federal court's jurisdiction is *in rem* and the state court action may effectively deprive the federal court of the opportunity to adjudicate as to the *res.*" *Standard Microsystems Corp. v. Texas Instruments Inc.*, 916 F.2d 58, 60 (2d Cir.1990). Conversely, where the state court's *in rem* jurisdiction is antecedent, a federal court may not take jurisdiction over the *res.* In *U.S. v. $79,-123.49 in U.S. Cash and Currency*, 830 F.2d 94, 95 (7th Cir.1987), the Seventh Circuit held that the federal district court could not take jurisdiction over property seized by a federal agent prior to termination of a state forfeiture proceeding involving the same *res.* "[W]hen state and federal courts each proceed against the same *res*, 'the court first assuming jurisdiction over the property may maintain and exercise that jurisdiction to the exclusion of the other.' " *Id.* at 96 (quoting *Penn General Casualty Co. v. Pennsylvania*, 294 U.S. 189, 195, 55 S.Ct. 386, 388–389, 79 L.Ed. 850 (1935)).

 This rule of "prior exclusive jurisdiction" applies to *in rem* and *quasi in rem* actions[1] because in such cases the court or its officer must have possession or control of the subject property in order to grant the relief sought. *Id.* at 97. Indeed, "[t]o safeguard the integrity of its orders, the first court to assume jurisdiction over the *res* may even enjoin proceedings in the second." *Id.* at 97 n. 3. The mere fact of possession by federal officials does not vest jurisdiction in the federal court. "To hold otherwise would substitute a rule of force for the principle of mutual respect

embodied in the prior exclusive jurisdiction doctrine." *Id.* at 98. Identical principles are stated in *U.S. v. One 1985 Cadillac Seville*, 866 F.2d 1142, 1145 (9th Cir.1989) ("rule of long standing prohibits a court, whether state or federal, from assuming in rem jurisdiction over a res that is already under the in rem jurisdiction of another court"), *petition for cert. filed*, May 10, 1989. The matter is not within the discretion of the federal court: "a federal court *must* yield to a prior state proceeding." *Id.* (emphasis in original). Principles of comity and federalism underlie the doctrine. "The purpose of the rule is the maintenance of comity between courts; such harmony is especially compromised by state and federal judicial systems attempting to assert concurrent control over the res upon which jurisdiction of each depends." *Id.*

The Government does not dispute these principles, but notes, correctly, that in *U.S. v. $79,123.49*, unlike the present case, the state (Wisconsin) had itself brought a forfeiture action against the currency prior to the U.S. marshal's seizure of the money. (*One 1985 Cadillac* also involved a prior state forfeiture action.) Emphasizing this point, the Government argues that this case is distinguishable because here, where the state had not sought forfeiture, there was no *in rem* jurisdiction over the property in state court. Therefore, the federal court was the first court to assume jurisdiction over the *res.* Conceding that only one court may exercise *in rem* jurisdiction over the currency at a time, the Government relies on the premise that the only state action in this case is an *in personam*

1. Vermont law recognizes both *in rem* and *quasi in rem* jurisdiction, see *Avery v. Bender*, 124 Vt. 309, 313, 204 A.2d 314, 317 (1964), although the distinction between the two concepts is sometimes blurred. See *LaFarr v. Scribner*, 150 Vt. 159, 160–61, 549 A.2d 651, 652–53 (1988) (using both terms to describe foreclosure proceeding). *Avery* states as follows: "The generally accepted definition of quasi in rem proceedings is that it [*sic*] affects only the interest of particular persons in specific property; thus distinguishing it from proceedings in rem which determine interests in specific property as against the whole world." 124 Vt. at 313, 204 A.2d at 317 (citing Restatement, Judgments § 32, comment a

(1942)). The definitions of the terms vary with the source, however. A leading treatise notes: "Actions that seek 'to affect the interests of particular persons in a thing,' which are called 'quasi-in-rem' by the Restatement, normally would be considered 'in rem' according to the general usage in vogue today." 4 C. Wright & A. Miller, Federal Practice and Procedure § 1070 n. 16 (2d ed. 1987). We are not called upon here to demarcate the two concepts with any precision; it is clear that if a proceeding under Rule 41(e) is properly characterized as either *in rem* or *quasi in rem*, exclusive jurisdiction remains in the state court.

action—the criminal proceeding against D'Amico. Thus the question squarely before the Court is whether the state Rule 41(e) proceeding for return of the property is *in rem* or *quasi in rem*, or whether it is *in personam*.

## II.

The Government relies principally on *U.S. v. Castro*, 883 F.2d 1018 (11th Cir. 1989), for the proposition that Criminal Rule 41(e) is not the appropriate remedy to seek the return of property when the property is subject to civil forfeiture proceedings. The basic proposition that the criminal rules are not the vehicle for recovering property seized pursuant to civil forfeiture statutes is clear enough. See Fed.R. Crim.P. 54(b)(5) ("These rules are not applicable to ... civil forfeiture of property for violation of a statute of the United States");[2] *Castro*, 883 F.2d at 1019; *U.S. v. U.S. Currency, $83,310.78*, 851 F.2d 1231, 1233 (9th Cir.1988); *In re Harper*, 835 F.2d 1273, 1274 (8th Cir.1988); *In re Seizure Warrant*, 830 F.2d 372, 374 (D.C. Cir.1987) ("Because proceedings under section 881 are civil in nature and there is no criminal proceeding with which the seizure is connected, appellant cannot avail himself of the relief provided by Fed.R.Crim.P. 41(e)."), *vacated as moot*, 488 U.S. 920, 109 S.Ct. 299, 102 L.Ed.2d 319 (1988). *Castro*, however, goes further. Castro had been arrested at the time his property was seized by federal agents, pursuant to a federal warrant, and filed his Rule 41(e) motion while criminal proceedings were pending. A U.S. magistrate denied the motion and two weeks later the government began civil forfeiture proceedings on the same property. Castro then appealed the magistrate's order denying Rule 41 relief, contending "that the institution of civil forfeiture proceedings *subsequent* to a Rule 41(e) Motion is not a defense to the Motion." 883 F.2d at 1019 (emphasis in original). The district court, affirmed by the Eleventh Circuit, disagreed. The seized vehicles were "not being retained to be used as evidence against him in the pending [criminal] action. Rather, these vehicles are being detained strictly pursuant to civil forfeiture provisions. Accordingly, Defendant cannot use the criminal procedure device of Rule 41(e) to seek relief from a civil forfeiture proceeding." *Id.* at 1020.

The courts are divided on the issue decided in *Castro*. See *Floyd v. United States*, 860 F.2d 999, 1003–07 (10th Cir.1988) (where government did not institute administrative forfeiture proceedings until over two months after Rule 41(e) motion was filed, equity permitted federal court to take jurisdiction over motion upon a showing of irreparable harm, even though motion was unrelated to a criminal action); *Robinson v. United States*, 734 F.2d 735, 738–39 (11th Cir.1984) (equity permitted return of seized property in face of pending civil forfeiture proceedings); *U.S. v. One 1985 Black Buick Automobile*, 725 F.Supp. 148, 150 (W.D.N.Y.1989) (claimant may be entitled to use Rule 41(e) motion to recover property prior to initiation of forfeiture proceedings); *Camacho v. United States*, 645 F.Supp. 725, 726–27 (E.D.N.Y.1986) (district court had jurisdiction over Rule 41(e) motion even though motion was filed after government completed forfeiture proceedings and no criminal charges were brought).

Even if the decision in *Castro* were the law of this Circuit—a question we need not reach—we do not believe *Castro* controls the issue before the Court. *Castro* is about the proper means of recovering property seized by federal officials. In certain circumstances Federal Rule 41(e) is not the correct avenue of relief—Castro had "simply chosen the wrong remedy in the wrong court." 883 F.2d at 1020. The present case, in contrast, is about the jurisdiction of a federal court to consider the Government's complaint for civil forfeiture when a *Vermont* Rule 41(e) motion is pending in *state* court. Perhaps the state court will decide that Rule 41(e) is the wrong remedy for Mr. D'Amico, but it hasn't yet made that decision, and should not be prevented from making it by an attempt to vest jurisdiction in federal court while the state

---

**2.** The Vermont Rules of Criminal Procedure are to the same effect. V.R.Cr.P. 54(a)(2).

court is considering the question. In short, the comity and federalism concerns underlying the present motion to dismiss were absent in *Castro*. See *U.S. v. One 1985 Cadillac Seville*, 866 F.2d at 1145.

### III.

■ Whether the state court had *in rem* or *quasi in rem* jurisdiction over the money is a matter of state law. See *Northern Cheyenne Tribe v. Adsit*, 721 F.2d 1187, 1188 (9th Cir.1983). We note that recent decisions of the Vermont District Court involving factually similar circumstances hold that jurisdiction to decide a Rule 41 motion is *in rem*. See *State v. Stillings*, No. 1119/20–8–89Bcr, slip op. at 7 (Vt.Dist. Ct., Bennington Co., Nov. 6, 1990); *State v. Detotehill*, No. 724–4–90 WmCr, slip op. at 10 (Vt.Dist.Ct., Windham Co., Oct. 10, 1990); *State v. Kendall*, Nos. 619–4–89 WmCr, 622–4–89 WmCr, slip op. at 5 (Vt. Dist.Ct., Windham Co., Aug. 27, 1990) ("There is no question that determinations to return property forfeited are *in rem* proceedings, whether pursuant to a state forfeiture statute, 21 U.S.C. § 881(a) or V.R.Cr.P. 41(e).").

D'Amico contends that these decisions are binding on this Court, citing *Knaefler v. Mack*, 680 F.2d 671, 675–76 (9th Cir. 1982), in his Supplemental Memorandum of Law for the proposition that federal courts should defer to a state district judge's interpretation of state law. This is incorrect. *Knaefler* in fact holds that the federal appellate court owes deference to the *federal* district judge's "interpretation of the law of the state in which he sits."

Federal courts are not obligated to follow lower state court rulings on questions of state law, but should give them "proper regard." *Commissioner of Internal Revenue v. Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782–83, 18 L.Ed.2d 886 (1967). The issue for the federal court is to decide the state law issue as it believes the highest state court would decide the issue. See E.

Chemerinsky, Federal Jurisdiction § 5.3, at 274 (1989). In the present matter, the Vermont Supreme Court has not provided a definitive answer.[3] Reading the tea leaves, however, we are persuaded that the court is likely to uphold the cited decisions of the trial courts.

■ The Government insists that an adjudication under Rule 41(e) cannot be *in rem* because it determines the rights to the seized property only between the state and the moving party; it does not "bind the whole world." This may be so. As noted in the margin above, however, Vermont law recognizes a category of *quasi in rem* jurisdiction whose preclusive effects are less comprehensive. *Quasi in rem* proceedings affect "only the interest of particular persons in specific property; thus distinguishing [them] from proceedings in rem which determine interests in specific property as against the whole world." *Avery v. Bender*, 124 Vt. at 313, 204 A.2d at 317. A hearing on a Rule 41(e) motion to return property corresponds to *Avery's* definition: it adjudicates the interests of particular persons (the state and the claimant) in specific property. To be sure, many lawsuits satisfy this description, and most are not characterized as depending on *quasi in rem* jurisdiction. But the context here is unusual: the seizure of property by law enforcement officials pursuant to court-ordered warrant may precede criminal process against any person—indeed, the owner of the property may never even be brought into court. The court thereby obtains jurisdiction over the property absent *in personam* jurisdiction over any person. A hearing on a motion to return the property is thus appropriately characterized as *quasi in rem*. We are aware that the more typical exercise of *quasi in rem* jurisdiction arises in altogether different circumstances.[4] Nonetheless, we believe it reasonable to conclude that Vermont's highest court would, if called upon, designate a Rule 41(e) proceeding as *quasi in rem;*

---

**3.** Motions for permission to appeal have been filed with the Vermont Supreme Court in both *Kendall* and *Detotehill*.

**4.** According to Wright & Miller:

A quasi-in-rem action is basically what the name implies—a halfway house between in rem and in personam jurisdiction. The action is not really against the property; rather it involves the assertion of a personal claim of the type usually advanced in an in personam

and, accordingly, the rule of "prior exclusive jurisdiction" applies. See *U.S. v. $79,-123.49*, 830 F.2d at 97.

Subsequent to briefing and oral argument of the pending motion, the Government has brought to the Court's attention a recent decision of the U.S. District Court in New Hampshire, which endorsed the doctrine of "adoptive foreclosure" to enjoin state proceedings as part of a federal forfeiture. *U.S. v. Certain Real Property Known as Lot B Governor's Road, Milton, N.H.*, 755 F.Supp. 487 (1990). That decision, however, is grounded on the conclusion that the state proceedings were "proceedings in the nature of in personam." At 490. Since we have reached a different conclusion as to the controlling state law in this district, the New Hampshire decision is inapposite.

To conclude, *quasi in rem* jurisdiction over the subject currency was vested in the state court when federal authorities took possession. This Court has no subject matter jurisdiction to consider the Government's complaint for forfeiture. The case is DISMISSED.

action and the demand ordinarily is for a money judgment, although in some contexts the objective may be to determine rights in certain property. The basis for transforming the suit from one in personam to an action against the defendant's property is the attachment or garnishment of some or all of the property he may have in the jurisdiction. If the plaintiff eventually secures a judgment in a quasi-in-rem action, it will be satisfied to the extent possible out of the attached property. 4 C. Wright & A. Miller, Federal Practice and Procedure § 1070, at 422 (2d ed. 1987). See also *Cargill, Inc. v. Sabine Trading & Shipping Co.*, 756 F.2d 224 (2d Cir.1985).