2004 VT 101

# State of Vermont v. Adam W. Wetherbee

[866 A.2d 527]

No. 03-160

Present: Amestoy, C.J.,[1] Dooley, Johnson, Skoglund and Reiber, JJ.

Opinion Filed October 1, 2004

---

[1] Chief Justice Amestoy sat for oral argument but did not participate in this decision.

*William H. Sorrell*, Attorney General, and *John Treadwell* and *David Tartter*, Assistant Attorneys General, Montpelier, for Plaintiff-Appellee.

*David J. Williams* of *Sleigh & Williams*, St. Johnsbury, for Defendant-Appellant.

¶ 1. **Johnson, J.** Adam Wetherbee appeals the Caledonia District Court's denial of his V.R.Cr.P. 41(e) motion for return of money that the Vermont State Police illegally seized from him, and subsequently transferred to federal authorities prior to the commencement of state proceedings in Vermont. The district court ruled that it lacked jurisdiction over the property because it was in the possession of federal agents. Wetherbee appealed the district court's decision to this Court notwithstanding the fact that the criminal case against him was dismissed before trial. The State has moved to dismiss the appeal for lack of jurisdiction because Wetherbee's claim does not arise from a final judgment against him in the criminal case and is not in compliance with the rules that otherwise permit interlocutory appeals. We

deny the State's motion to dismiss, but affirm the district court's jurisdictional ruling on Wetherbee's Rule 41(e) motion.

¶ 2. On October 31, 2002, a Vermont state trooper stopped Wetherbee for speeding in Danville, Vermont. The trooper got Wetherbee to sign a consent form authorizing him to search the vehicle without first obtaining a search warrant. During the search, the trooper discovered currency totaling $30,629.50 together with a small amount of narcotics.

¶ 3. On November 1, 2002, the Caledonia County State's Attorney filed two informations charging Wetherbee with misdemeanor possession of marijuana and cocaine. Also on November 1, 2002, the Caledonia County State's Attorney notified the trooper that it would not seek forfeiture of the seized money. Later that day, an agent assigned to the U.S. Drug Enforcement Agency (DEA) notified the trooper that the federal government would seek forfeiture of the money.

¶ 4. On November 4, 2002, the State transferred the money to a DEA agent. Later that day, after Wetherbee had been arraigned, he filed a motion to suppress evidence under Vermont Rule of Criminal Procedure 12(b)(3) and to return property pursuant to Rule 41(e). On February 4, 2003, the trial court held a hearing on Wetherbee's motion for return of property. On March 18, 2003, the court denied Wetherbee's motion, stating that Vermont lacked jurisdiction over the currency because the State had transferred it to federal agents before Wetherbee filed his motion.

¶ 5. On April 1, 2003, the district court held a hearing on Wetherbee's motion to suppress. The district court granted the motion, and the State dismissed all charges against Wetherbee. On April 2, 2003, Wetherbee filed a notice of appeal informing the district court of his intent to appeal its order denying the Rule 41(e) motion for return of property.

## I. Appellate Jurisdiction

¶ 6. Preliminarily, the State moved to dismiss the appeal for lack of jurisdiction, and we delayed ruling on its motion until now. The basis of our appellate jurisdiction depends on the origin of the ruling that the appellant wants reviewed — in this case a Rule 41(e) motion for return of property filed by defendant Wetherbee at a time when a criminal prosecution was pending against him in the court where he filed the motion.

¶ 7. Rule 41(e) provides a means by which persons can seek the return of property that the State has seized. The rule provides that:

A person aggrieved by an unlawful search and seizure may move the court to which the warrant was returned or the court in the county ... where property has been seized without warrant for the return of the property on the ground that he is entitled to lawful possession of the property which was illegally seized. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted the property shall be restored and it shall not be admissible in evidence at any hearing or trial. After an indictment or information is filed, a motion for return of property shall be made or heard only in the county or territorial unit of trial and shall be treated as a motion to suppress under Rule 12(b)(3).

V.R.Cr.P. 41(e).

¶ 8. "When criminal proceedings against the moving party are not yet pending or have transpired, the [Rule 41(e)] motion is treated as a civil equitable proceeding." *State v. Kornell*, 169 Vt. 637, 638, 741 A.2d 290, 291 (1999) (mem.). The rule distinguishes motions made by defendants after an indictment or information has been filed, and requires that these motions "shall be treated as a motion to suppress under Rule 12(b)(3)." V.R.Cr.P. 41(e). Vermont's rule is based heavily on a previous version of the federal rule.[2] Reporter's Notes, V.R.Cr.P. 41(e). Federal courts recognize that Federal Rule of Criminal Procedure 41(e) motions made in the context of pending criminal proceedings warrant different treatment from those made after the criminal prosecution has been completed. See 3A C. Wright et al., Federal Practice and Procedure: Criminal § 673, at 351 n.46 (3d ed. 2004) (citing cases). The Tenth Circuit Court of Appeals summarized the federal approach:

Because [of] the effect of a successful motion for the return of property ... such a motion [is] properly appealable only where it [is] truly a motion for the return of property unrelated to a pending criminal proceeding. ... [A] ruling on a

---

[2] In 2002, the text of the federal rule was amended, and motions for return of property are now authorized by Fed. R. Crim. P. 41(g). Vermont's rule has not tracked the changes to the federal rule. The cases relevant to our analysis here interpret the language of the rule as it existed prior to the recent amendments. We will, therefore, reference the language of former Fed. R. Crim. P. 41(e) and not the current federal rule.

motion to suppress evidence is interlocutory when a criminal prosecution is *in esse*. Therefore, the appellate court lacks jurisdiction to review such rulings. . . . [O]nly if the motion is solely for return of property *and* is in no way tied to a criminal prosecution *in esse* against the movant can the proceedings be regarded as independent.

*In re Search of Premises Known as 6455 S. Yosemite, Englewood, Colo.*, 897 F.2d 1549, 1554 (10th Cir. 1990) (internal quotation marks and citations omitted); accord *U.S. Postal Service v. C.E.C. Servs.*, 869 F.2d 184, 186 (2d Cir. 1989); *In re Grand Jury Proceedings*, 730 F.2d 716, 717 (11th Cir. 1984).

■ ¶ 9. By its express terms, Vermont Rule 41(e) requires motions made by defendants with informations pending against them to be treated like motions to suppress.[3] In so doing, the rule recognizes that the resolution of motions for return of property entails, in part, the same analysis as a motion to suppress. To grant either motion, the trial court must first determine that the underlying search and seizure was unlawful. Compare V.R.Cr.P. 41(e) (motions for return of property limited to persons "aggrieved by an unlawful search and seizure"), with V.R.Cr.P. 41(f) (motions to suppress evidence limited to defend-

---

[3] At oral argument, the State noted that there is a difference between the operative phrase in the former Federal Rule of Criminal Procedure 41(e) and the analogous phrase in V.R.Cr.P. 41(e). The federal rule stated that "[i]f a motion for return of property is made or comes on for hearing . . . after an indictment or information is filed, it shall be treated also as a motion to suppress under Rule 12," whereas V.R.Cr.P. 41(e) states that "[a]fter an indictment or information is filed, a motion for return of property . . . shall be treated as a motion to suppress under Rule 12(b)(3)." The State argues that the omission of the word "also" in the Vermont rule signals a departure from the federal rule, and thus indicates an intention to limit defendants in Wetherbee's position to suppression of the seized property from evidence. The Reporter's Notes gives no indication as to why Vermont adopted different language, but it does cite to the Federal Rules Advisory Committee notes on the amendment that added the language to the federal rule. The notes state:

A sentence is added to subdivision (e) to provide that a motion for return of property, made in the district of trial, shall be treated also as a motion to suppress under rule 12. This change is intended to further the objective of proposed rule 12 which is to have all pretrial motions disposed of in a single court appearance rather than to have a series of pretrial motions made on different dates, causing undue delay in administration.

48 F.R.D. 547, 633 (1970). We see no reason to adopt the State's interpretation as it would do little to advance the policy goals that the language in both rules is apparently meant to serve.

ants "aggrieved by an unlawful search and seizure"). Motions to suppress evidence in ongoing criminal prosecutions are generally interlocutory in nature. Such rulings denying suppression of evidence are unreviewable as of right except as part of an appeal from a conviction. See *State v. Karcz*, 134 Vt. 187, 188, 352 A.2d 687, 688 (1976) (per curiam) (discussing why, under V.R.A.P. 5(a), interlocutory review of denial of defendant's motion to suppress evidence is inappropriate).

¶ 10. The State contends that the different treatment Rule 41(e) requires for motions made by a defendant during the pendency of the criminal prosecution — as opposed to Rule 41(e) motions made after the criminal prosecution terminates — effectively limits the unsuccessful movant to either an interlocutory appeal pursuant to V.R.A.P. 5 or a collateral order appeal pursuant to V.R.A.P. 5.1. The State's conclusion relies on the fact that Wetherbee cannot appeal from a final judgment in the criminal case because the charges against him were dismissed. See 13 V.S.A. § 7401 (requiring a "judgment of conviction" before a defendant can appeal the disposition of a criminal action). With that appeal route closed, the State argues that Wetherbee's failure to seek trial court permission before taking the instant appeal, as is required by both V.R.A.P. 5 and V.R.A.P. 5.1, deprives this Court of jurisdiction. See *State v. Corliss*, 145 Vt. 169, 171-72, 484 A.2d 924, 925-26 (1984) (declining interlocutory appeal because appellant failed to seek trial court's permission to take appeal as required).

¶ 11. The State's argument with respect to V.R.A.P. 5 fails because the judgment on appeal is not within the ambit of that rule. We also reject the State's argument with respect to the collateral final order rule, because nothing in the text of V.R.A.P. 5.1 or the policies underlying that rule suggests that it is intended to be, as the State's argument in this case implies, the exclusive and compulsory path for certain appeals.

¶ 12. Appellate Rule 5(b) allows appeals of potentially dispositive issues of law in criminal cases to be taken with permission of the trial court, or in the event that the trial court does not grant permission, from this Court. V.R.A.P. 5(b); see also 12 V.S.A. § 2386 (providing the Supreme Court with jurisdiction over interlocutory appeals). Aside from enumerated categories of interlocutory appeals available to the State in felony actions, Rule 5(b)(1) extends only to an "order or ruling involv[ing] a controlling question of law as to which there is substantial

ground for difference of opinion and ... an immediate appeal may materially advance the termination of the litigation." At the time it was decided, the jurisdictional ruling on Wetherbee's Rule 41(e) motion was unrelated to the merits of the pending misdemeanor prosecutions, and therefore, an early appeal of the ruling had little or no potential to "materially advance the termination" of the underlying criminal litigation. V.R.A.P. 5(b)(1). Accordingly, the State's argument on this point fails because Wetherbee's appeal is beyond the scope of that rule.

¶ 13. Without analysis, the State argues that the court's ruling amounted to a collateral final order appealable under V.R.A.P. 5.1, and, therefore, Wetherbee had to acquire permission from the trial court before taking the instant appeal. In Vermont, a ruling that "conclusively determines a disputed question, resolves an important issue completely separate from the merits of the action, and will be effectively unreviewable on appeal from a final judgment," is considered a collateral final order. V.R.A.P. 5.1(a). These are interlocutory appeals and are discretionary. *In re J.G.*, 160 Vt. 250, 253-54, 627 A.2d 362, 364 (1993). Rule 5.1 provides an additional avenue for interlocutory appeals from orders involving rights that " 'would be lost, probably irreparably, if review were delayed until the conclusion of proceedings in the [trial] court.' " *State v. Lafayette*, 148 Vt. 288, 291, 532 A.2d 560, 561-62 (1987) (quoting *In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1119 (7th Cir. 1979)). Requiring trial court permission before taking a collateral final order appeal serves to "balance the possible loss of important rights," in the event that interlocutory review of the order is not permitted, against our "policy of avoiding piecemeal review." *In re C.K.*, 156 Vt. 194, 196, 591 A.2d 57, 59 (1991) (internal quotations omitted). The collateral final order rule does not, however, require every order that would qualify as a collateral final order to be appealed. Instead, it creates an additional avenue for litigants to obtain interlocutory appellate review of a qualifying order before the trial court enters final judgment in the case.

¶ 14. Wetherbee's appeal is not interlocutory because, at the time it was taken, there were no longer any proceedings pending against him. Failure to comply with V.R.A.P. 5.1 will not bar a timely appeal of an order when the action to which it was collateral is no longer pending and the order being appealed is the type of final judgment that would, standing alone, ordinarily support appellate

jurisdiction. While these circumstances may be rare, they are present here.[4]

¶ 15. The State acknowledges that we ordinarily treat Rule 41(e) motions made "[w]hen criminal proceedings against the moving party are not yet pending or have transpired" as independent civil equitable proceedings. *Kornell*, 169 Vt. at 638, 741 A.2d at 291. An appeal from such an independent ruling would thus unquestionably support jurisdiction in this Court. See *State v. Crannell*, 171 Vt. 623, 623, 768 A.2d 1260, 1261 (2000) (mem.) (appeal based solely on district court's denial of a post-trial Rule 41(e) motion). The State points out that Wetherbee's motion lacked that independent civil character because it was made in the context of an ongoing criminal proceeding. See Reporter's Notes, V.R.Cr.P. 41(e) ("The rule separates motions for the return of property, brought as quasi-civil, independent proceedings by any person claiming possession, and motions to suppress, made by a defendant with standing to object to the search and seizure after indictment or information."). According to the State's argument, Wetherbee's appeal of the adverse ruling on the Rule 41(e) motion cannot, by itself, support appellate jurisdiction because it was part of the criminal case, and a defendant who does not elect interlocutory review has only an appeal as of right in a criminal case from a judgment of conviction. See 13 V.S.A. § 7401. The State's interpretation of the rule does not serve the purposes of V.R.Cr.P. 41(e), and therefore we reject it.

¶ 16. At its heart, Rule 41(e) is designed to provide a forum for persons to regain property illegally seized by the State. By treating Rule 41(e) motions made by defendants during the pendency of a criminal prosecution like motions to suppress under Rule 12(b)(3), Rule 41(e) accomplishes two important goals. First, it allows the court to consolidate all pretrial motions that require resolution of the same threshold question: whether the State seized the property illegally. Second, it prevents piecemeal review of the grounds for suppression that would disrupt the underlying criminal prosecution. The State's attempt to limit a defendant's appeal rights in Rule 41(e) cases does not serve either of these goals, let alone the rule's ultimate goal of

---

[4] We have not determined that the ruling on appeal would have satisfied the three requirements for collateral final order review under V.R.A.P. 5.1 if it had been taken as an interlocutory appeal. Our ultimate conclusion that V.R.A.P. 5.1 does not bar the instant appeal obviates the need for such analysis.

ensuring that illegally seized property is returned to those entitled to possess it. By contrast, the approach employed by the federal courts implementing the federal rule upon which Vermont's Rule 41(e) is based balances all of these considerations.

¶ 17. Federal courts will consider appeals from a denial of a Rule 41(e) motion as "independent," and therefore appealable, only when the motion satisfies a two-pronged test. *6455 S. Yosemite*, 897 F.2d at 1554. First, the motion must be solely for the return of property, and second, it cannot be tied in any way to a pending criminal prosecution. *Id.*

¶ 18. Applying the first prong of the federal test, we conclude that Wetherbee's motion — as it related to the seized currency that is the subject of this appeal — was solely a motion for the return of property. The motion was styled as both a motion to suppress and for return of property, but by its terms, the latter request pertained only to the currency. The motion states that "[d]efendant hereby moves this Court to suppress contraband illegally seized from him and to order the Vermont State Police to return $30,584.50 in ... currency unlawfully seized from him."

¶ 19. Applying the second prong of the federal approach, we note that although Wetherbee's motion is only a motion for return of property, it was tied to an ongoing criminal prosecution at the time Wetherbee made it and at the time the court ruled upon it. See *6455 S. Yosemite*, 897 F.2d at 1554 (adverse ruling on motion not reviewable if tied to an ongoing criminal prosecution). The grounds advanced in Wetherbee's motion for return of property and to suppress evidence are inextricably linked. In his motion, Wetherbee argues that the search that yielded the drugs and the money was unlawful. A ruling on the legality of the search as it applied to the money would have decided the same question as it pertained to the drugs that were essential to the ongoing prosecution. The link between the ongoing criminal prosecution and Wetherbee's Rule 41(e) motion was severed when the case against him was dismissed approximately two weeks later. As we noted previously, we treat Rule 41(e) motions made after the conclusion of criminal proceedings as independent civil proceedings. *Kornell*, 169 Vt. at 638, 741 A.2d at 291. Wetherbee's decision not to appeal the judgment on the motion until after the conclusion of the criminal prosecution avoided the danger of disruptive interlocutory review. That danger is the only reason to treat motions made during ongoing criminal prosecutions differently from those made after the prosecution has terminated. In the absence of this concern, fairness requires

that we consider this subsequent development in the case and view the motion — the only issue remaining in Wetherbee's case — as an independent civil action appealable in the same manner as a final judgment entered on a Rule 41(e) action commenced after the termination of the criminal prosecution.

¶ 20. We hold that the order denying Wetherbee's motion for return of property for lack of jurisdiction over the property is a final judgment from which an appeal as of right will lie. Wetherbee's notice of appeal was timely filed, and he has met the other requirements of V.R.A.P. 3 and V.R.A.P. 4. Accordingly, we deny the State's motion to dismiss the appeal.

## II. State Court Jurisdiction

¶ 21. This case requires us to determine the scope of state court power to compel the State to return property it allegedly seized in violation of law. Wetherbee argues that this power extends to property that the State lawfully transferred to another sovereign, namely the federal government, prior to the initiation of a state court action seeking its return. We disagree.

¶ 22. A motion for the return of property pursuant to Rule 41(e) is essentially a replevin action that lies exclusively against the State. Compare V.R.Cr.P. 41(e) (a "person aggrieved by an unlawful search and seizure may move the court . . . for the return of the property on the ground that he is entitled to lawful possession" of the illegally seized property), with 12 V.S.A. § 5331 ("A person may maintain an action of replevin for goods . . . (1) [w]hen goods are unlawfully taken or unlawfully detained from the owner or person entitled to the possession thereof."). It is well settled that a party demanding possession cannot maintain a replevin action against a defendant who, at the time the action is instituted, is not in possession of or cannot exercise control over the property sought. *Morgan v. Property Clerk*, 708 N.Y.S.2d 262, 263 (Sup. Ct. 2000) ("The *sine qua non* of an *in rem* or replevin action is that the respondent have possession of the property to be returned."); accord *Scottsdale Ginning Co. v. Longan*, 209 P. 876, 880 (Ariz. 1922) (citing cases); see also *Milhahn v. Sapp*, 86 N.E.2d 667, 669 (Ill. App. Ct. 1949) (replevin action will not lie against defendant not in possession of property at time when action initiated even if defendant once possessed property, but parted with it in good faith before plaintiff filed suit); *De Lore v. Smith*, 136 P. 13, 14 (Or.

1913) (action in replevin will not lie unless defendant is in actual or constructive possession of the property sought). The possession requirement prevents the court from issuing an ineffectual order; a defendant who neither possesses nor controls the property obviously cannot comply with an order to return it. The possession requirement is, therefore, a prudential limitation on the court's jurisdiction.

¶ 23. The "race to the res" referenced in *State v. Terry*, 159 Vt. 531, 536-37, 621 A.2d 1285, 1288 (1993) (Johnson, J., concurring), and in the trial court's opinion, recognizes the practical reality dictated by this jurisdictional limitation on the court's powers under Rule 41(e). A person seeking return of property under the rule must file a motion before the State transfers possession to the federal government. Once the transfer takes place, the race is lost. The person seeking return of property must then do so in a federal forum because the res is no longer in the possession of a party before the court and consequently is not present in the jurisdiction.

¶ 24. Applying this rule to the instant case, we must affirm the trial court's ruling that it lacked jurisdiction over Wetherbee's motion because the State was not in actual or constructive possession[5] of Wetherbee's currency at the time he filed the motion seeking its return. The facts are not in dispute on appeal. Wetherbee's counsel filed the motion at 2:39 p.m. on Monday, November 4. At the hearing on Wetherbee's Rule 41(e) motion,[6] the arresting officer testified that

---

[5] At least one federal court, relying on the notion of constructive possession, has recognized that a court acting pursuant to Federal Rule of Criminal Procedure 41(e) may still order the return of property that the federal government did not physically possess, but nonetheless controlled by virtue of an agreement with state authorities who were in possession of the property. *United States v. Fabela-Garcia*, 753 F. Supp. 326, 328 (D. Utah 1989). This is not the case here. The record indicates, though it is not entirely clear, that the agent who took custody of Wetherbee's money was actually a Vermont State Trooper specially assigned to a federal drug task force. This is unimportant, however, because the record does not contain any information that would lead this Court to believe that State authorities had any power to direct the trooper, while acting in his capacity as a federal agent, to return the money. Nor does the record indicate that the State had an agreement with the federal authorities whereby the State could regain possession of the money. See *id.* (agreement with state gave federal prosecutor authority over all aspects of the case).

[6] Rule 41(e) requires the court to take evidence on "any issue of fact necessary to the decision of the motion." This requirement applies even in cases where the government claims it is no longer in possession of the seized property. *United States v. Chambers*, 192 F.3d 374, 378 (3d Cir. 1999) (If "the government asserts that it no longer has the property sought, the District Court must determine, in fact, whether the government

on the morning of November 4, another state trooper, serving as an agent-liaison for the U.S. DEA, took custody of the money on behalf of federal authorities. Wetherbee offered no evidence to contradict this chronology. Thus, the evidence shows that Wetherbee lost the race to the res, if only by a few hours.

¶ 25. In reaching its conclusion, the district court applied the so-called "adoptive forfeiture" doctrine. Even though Wetherbee's money was allegedly derived from illegal drug sales, the State declined to initiate forfeiture under Vermont law, see 18 V.S.A. §§ 4241-4248, deferring instead to the federal authorities. The district court noted that the federal government also has the authority to seize and forfeit all proceeds from illegal drug sales. 21 U.S.C. § 881(a)(6). The "adoptive forfeiture" doctrine recognized by federal courts allows the federal government to "adopt" a state seizure of property subject to federal forfeiture, and such adoption has the same effect as if the federal government had originally seized property. *United States v. $119,000 in U.S. Currency*, 793 F. Supp. 246, 249 (D. Haw. 1992). In other words, the federal government's subsequent seizure of property relates back to the moment when the state authorities initially seized it. *United States v. Alston*, 717 F. Supp. 378, 380 (M.D.N.C. 1989). Our analysis makes clear that Wetherbee lost the race to the res regardless of any relation back accomplished by the government's "adoption" of the state seizure. Accordingly, we decline to employ this legal fiction here.

¶ 26. Wetherbee mistakenly relies on *United States v. $2,542 in U.S. Currency*, 754 F. Supp. 378 (D. Vt. 1990), a case that presents an altogether different set of facts. In *$2,542*, the Vermont State Police seized alleged drug proceeds from a suspect's apartment. The State communicated with the DEA about possible federal forfeiture of the money, but made no immediate transfer of custody to federal authorities. *Id.* at 379. Meanwhile, the suspect moved the state court for return of the seized money pursuant to Rule 41(e). The state court commenced a hearing that it suspended to continue on a later date. Subsequently, the State transferred custody of the money to the DEA without first obtaining state court permission or providing notice to the suspect. *Id.* The federal district court declined to hear the federal government's civil forfeiture petition for the money, ruling that

retains possession of the property .... The District Court must hold an evidentiary hearing on any disputed issue of fact necessary to the resolution of the motion.").

jurisdiction had vested in the state court because the suspect filed a Rule 41(e) motion in state court *before* the State transferred possession to the DEA. *Id.* at 383. The court rested its decision on the principle that two courts may not exercise simultaneous in rem jurisdiction over the same res. *Id.* at 379-80. This principle, known as prior exclusive jurisdiction, is inapposite here. As we have explained, the State's antecedent transfer of the money to federal agents precluded state district court jurisdiction for Wetherbee's subsequently filed Rule 41(e) motion concerning the property.

¶ 27. Wetherbee also erroneously relies on *United States v. $490,920 in U.S. Currency*, 911 F. Supp. 720 (S.D.N.Y. 1996), even though the case turns on ˙a state statutory scheme that has no equivalent in Vermont law. That case involved personal property that was seized by state authorities pursuant to a warrant issued by the state court. Under New York law, such property was to be retained by the court issuing the warrant, or in the custody of the person who sought the warrant upon condition that such person comply with all orders of the issuing court to return the property to that court or turn it over to another court. *Id.* at 724 (citing N.Y. Crim. Proc. Law § 690.55(1)). The state district attorney moved the state court to turn the property over to the federal government, but the court denied the motion and granted a cross-motion for the return of the property to the parties from whom it had been seized. *Id.* at 723. Despite this court order, the state district attorney arranged for the property to be turned over to the federal government, and federal authorities then sought seizure in federal court. *Id.* at 723-24. The federal court concluded that New York's warrant and seizure scheme vested in rem jurisdiction in the state court until such time as the court issued an order releasing the seized property from its control. *Id.* at 725. The federal court declined to exercise jurisdiction over the seized property because it held that, despite the transfer of physical custody to federal authorities, and in the absence of a proper "turnover order," the New York state court still had exclusive jurisdiction over the seized property. *Id.* at 731-32.

¶ 28. In *State v. Terry*, we made clear that neither seizure of property pursuant to a warrant issued by a Vermont state court, nor the filing of an inventory in state court including property seized in a search incident to arrest will vest in rem jurisdiction in the court. 159 Vt. at 533 & n.\*, 621 A.2d at 1286 & n.\*. In the absence of a statutory jurisdictional scheme analogous to the one relied upon by the federal court in *$490,920*, the case does not support Wetherbee's position.

*Affirmed.*